W. J. USERY, Jr., Secretary of Labor, United States Department of Labor, Appellant,

v.

FIRST NATIONAL BANK OF ARIZONA, a National Banking Association, Appellee.

No. 75-3763.

United States Court of Appeals, Ninth Circuit.

Nov. 3, 1978.

Ronald G. Whiting (argued), Washington, D. C., for appellant.

Robert E. B. Allen (argued), of Streich, Lang, Weeks, Cardon & French, Phoenix, Ariz., for appellee.

Before SNEED and KENNEDY, Circuit Judges, and HALL,* District Judge.

KENNEDY, Circuit Judge:

This case involves the enforcement and administration of the Consumer Credit Protection Act (Act), 15 U.S.C. § 1671 *et seq.* The question presented is whether a bank served with a garnishment directed at a depositor's account is required to determine the depositor's right to a wage earn-

* Honorable Peirson M. Hall, Senior United States District Judge for the Central District of California, sitting by designation.

er's exemption under the Act, and, if so, whether the bank is required to calculate the amount of that exemption before honoring the garnishment. Contrary to the position urged by the Secretary of Labor, we hold that a bank is not required to make such determinations, and we affirm the judgment of the district court.

The Secretary of Labor instituted the action pursuant to his authority to enforce the Act. 15 U.S.C. § 1676. The initial complaint alleged that the First National Bank of Arizona violated the Act by paying a garnishment attaching sums in the checking account of a depositor, a Mr. Hill, without first applying the Act's garnishment limitations, which provide certain exemptions for wages. The Secretary later amended the complaint to allege the bank had violated the Act continuously since about July 23, 1971 by honoring garnishments of accounts covered by the exemption. The complaint prayed for an injunction requiring the bank to comply with the Act as interpreted by the Secretary and further for an order requiring the bank to restore to its depositors any sums lost by excessive garnishment payments, together with interest. Except for Mr. Hill's account, the amended complaint did not name any specific instance in which the bank had violated the Act.

After three years of discovery in which all concerned sought to identify the depositors' accounts which had been garnished in alleged violation of the Act and to calculate the applicable exemption in each case, both parties moved for summary judgment. The district court entered judgment for the bank, holding that the statutory exemption applies to garnishments of the employer of a debtor but not to a bank which holds the debtor's deposits, and that even if the Act does apply to garnishment of compensation on deposit in the bank, the bank has no duty to assert the statutory defenses of the depositor.

The garnishment restrictions of section 303(a) are stated as follows:

> Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed
>
> > (1) 25 per centum of his disposable earnings for that week, or
> >
> > (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of title 29 in effect at the time the earnings are payable,
>
> whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

15 U.S.C. § 1673(a). The "disposable earnings" of the employee are calculated from "earnings" by deducting "any amounts required by law to be withheld." Act § 302(b), 15 U.S.C. § 1672(b). Central to the Secretary's interpretation of section 302(a) is the definition of "earnings" as used in that section:

> The term "earnings" means compensation *paid* or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

Act § 302(a), 15 U.S.C. § 1672(a) (emphasis supplied). The Secretary argues that compensation "paid" to an employee retains its character as "earnings" even after it is turned over to an employee or deposited directly in the employee's bank account, and hence that the garnishment restrictions of the Act apply to such funds.

Stressing that "garnishment" as defined in the Act is not limited to garnishment of the employer by any explicit language, the Department asks us to infer from this that Congress intended the employees' compensation to be traced from the employer into the hands of a third party and to require the third party to be bound by the Act. We think the statutory scheme, the legislative history, and the case law refute the Secretary's theory, as does the Secretary's own

demonstrated inability to make a rational application of the Act to any of the accounts alleged to be within the Act's coverage in this case.

While the Act does not limit the exemption provisions to garnishment of employers, neither does it contain any reference, direct or indirect, to the duty of a nonemployer garnishee to comply with its provisions. The Act's formula for calculating garnishment restrictions requires information which far exceeds that which is ordinarily available to a financial institution. Moreover, the Act contains no suggestion as to how a bank could acquire such information or maintain records without impinging upon the privacy of its depositors. The restrictions of section 303 are defined in terms of a percentage of compensation for a weekly pay period and in terms of the minimum wage for a 30-hour week. These calculations bear no relation to the lump sum amount in a checking or savings account.

To underscore further the point that the statute is not designed so that a bank can calculate a wage earner's exemption, we note that the Secretary could not interpret the Act in various of its critical aspects as applied to this case. Thus, even assuming the bank were to obtain information as to its depositors' weekly compensation, it must further be determined how far back it is required to trace weekly wages deposited in the account. At oral argument before this court, counsel for the Department stated, somewhat hesitantly, that banks are required by the statute to calculate and apply garnishment restrictions for "several" prior pay periods. That ad hoc assertion provides inadequate guidelines for statutory compliance. The word "several" indicates an indefinite number; to subject a bank to potential civil liability for paying a garnishment in violation of a statute that is so

loosely interpreted by the administrative agency or, alternatively, to require the bank to commence interpleader proceedings to protect it from liability, is not a result that we will consider within the contemplation of Congress. If, in the face of such an indefinite statutory duty banks were to commence interpleader proceedings as a normal response, the very wage earners who are within the protection of the Act would incur needless costs, thus undercutting the statutory purpose.

The statutory uncertainties inherent in the Department's construction do not end here. Assuming the bank could determine both the amount of wages deposited and the number of pay periods to which the Act applies, it would be required to make the further determination whether withdrawals from the account made during or after that period were allocable to earnings or to monies deposited in the account from other sources. The Secretary suggested that a first-in, first-out calculation could be used, but there is neither a statutory nor an administrative basis for this conclusion.

Finally, the Secretary attempted in this case to calculate for the court below the appropriate garnishment restriction for each of the accounts which, under his theory, the bank had allegedly garnished in violation of the Act. Despite three years of discovery, including depositions of various depositors, conducted at a great expense to the bank, all of the Secretary's calculations for all of the accounts in question were just plain wrong.[1] It is incongruous, to use the most polite term warranted here, for the administrator to persist in a statutory interpretation in order to impose a duty upon the bank which the Department cannot perform itself.

Banks and other financial institutions would face significant cost burdens if required to make the determinations demand-

1. The case of Mr. Hill, which was the only specific violation alleged in the complaint illustrates the impracticality of the Department's theory that banks should be required to calculate the exemption. The information given to the bank initially by Mr. Hill as to the source of his deposits contained substantial errors.

Moreover, it now appears that the judgment which underlies the garnishment might be interpreted under Arizona law as one for support in which case the restrictions of the Act are inapplicable in any event. Act § 303(b)(1), 15 U.S.C.A. § 1673(b)(1).

ed of it by the Department in this case. It is unrealistic to assume that Congress intended to impose such duties without mentioning banks or financial institutions in this title of the statute or without conducting any hearings that would give financial institutions fair warning that they were subject to such obligations. A congressional purpose to enact a statute to cover those institutions is all the more unlikely when it is noted that banks and like institutions did present extensive testimony concerning other titles of the Act which would affect financial institutions. *See, e. g.,* 114 Cong. Rec. 1426 (remarks of Rep. Patman); 1432 (remarks of Rep. Widnall); 1434 (remarks of Rep. Sullivan); 1443 (remarks of Rep. Hanna) (1968).

■ An interpretation of the Act which limits its application to employers (or those who stand in the position of employers by virtue of paying or owing compensation for services to the individual debtor) is consistent with the congressional purposes evident on the face of the Act and from the legislative history. A concern for preserving the stability of the employer-employee relationship in the face of the garnishment is explicitly set forth in a section of the Act entitled, "Congressional findings and declaration of purpose," Act § 301(a)(2), and is implicit in the section of the Act which provides that an employer may not discharge an employee by reason of the fact that his wages have been garnished for one indebtedness. Act § 304, 15 U.S.C. § 1674. This purpose would not be furthered by extending the Act's restrictions to garnishee banks since garnishments of bank accounts, unlike garnishment of an employer, is not likely to lead to loss of employment.

The definition of earnings as compensation "paid or payable" in section 302(a) is not inconsistent with this view, and is quite consistent with an interpretation that confines the duty to apply the exemption exclusively to the employer or those in the position of the employer. The term "paid" as applied to the employer will cover those amounts which have been accrued on the employer's books, and thus are "paid" in the accounting sense, even though such funds have not yet been transmitted to the employee. This construction is an adequate explanation for the use of the terms "paid or payable." Moreover, we find it unreasonable to use the single word "paid" as the basis for the sweeping extension of the Act advocated by the Department.

Although there are no cases addressing whether or not compensation retains its character as "earnings" after it has been deposited in the employee's bank account, the Supreme Court has held that income tax refunds are *not* considered "earnings" within the meaning of the Act even if such funds can be traced to compensation in the form of wages. *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). The Court determined that the terms "earnings" and "disposable earnings" as used in the statute

> were limited to "periodic payments of compensation and [do] not pertain to every asset that is traceable in some way to such compensation." This view is fully supported by the legislative history.

*Id.* at 651, 94 S.Ct. at 2436 (quoting from opinion of the Court of Appeals in that case, 479 F.2d 990, 997 (2d Cir. 1973)). The Court found that Congress' purpose in enacting the statute was, "to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis." 417 U.S. at 651, 94 S.Ct. at 2436. Like a lump sum tax return, a bank account has neither an element of periodicity nor the critical relationship to a person's subsistence that a paycheck does. We think that the rationale of *Kokoszka* supports the result here.

The Secretary cites cases interpreting two other statutes as precedent for holding that the phrase "compensation paid or payable" as used in this Act should be interpreted as including compensation deposited in an employee's bank. *Philpott v. Essex County Welfare Board,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (Social Se-

curity Act); *Porter v. Aetna Casualty Co.,* 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962). Those cases, if anything, suggest a contrary result. In *Porter* the Court held that veterans' benefits remain exempt from process even when deposited in a federal savings and loan association account. However, the statute interpreted by the Court in that case explicitly stated that such benefits

> shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

38 U.S.C. § 3101(a). The clear statement in that statute of a restriction on a creditor's ability to reach veterans' benefits even though they had already passed into the hands of the beneficiary, suggests that in drafting the Consumer Credit Protection Act Congress would have chosen similar unequivocal terms to restrict garnishment of wages already received by an employee if it had intended such a restriction. The Social Security Act, interpreted in *Philpott* to protect from legal process social security payments on deposit in a bank account, has similarly broad language:

> [N]one of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process . . . .

42 U.S.C. § 407. Unlike the Social Security Act, the Consumer Credit Protection Act protects the funds concerned only from garnishment. If Congress had meant to restrict creditors' access to wages even after they left the control of the employer, it seems anomalous that it did not provide for protection from attachment of such monies while in the hands of the employee, as they did in the case of social security benefits. See Act § 302(c), 15 U.S.C. § 1672(c) (definition of "garnishment").

While an administrative department is entitled, ordinarily, to some deference in the interpretation of the statute it enforces, courts "are not obligated to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with the statutory mandate or that frustrate the congressional policy underlying a statute." *Volkswagenwerk Aktiengesellschaft v. FMC,* 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968). In this case the agency's interpretation departs so widely from the statutory mandate that it is explicable more easily as an organic reflex to extend its own jurisdiction than as a reasoned interpretation of the statute.

AFFIRMED.