Anita L. NEELEY, Marcus S. Martin and Carmen Orozco, individually and on behalf of all others similarly situated, Plaintiffs,

v.

CENTURY FINANCE COMPANY OF ARIZONA; Bonnie Brae's Nursing Home, Inc.; Doctor's Business Bureau, Arizona Corporations; First Interstate Bank, a federal banking association; Alan E. Maguire, Deputy Treasurer, State of Arizona, in his official capacity; Lydia Marie Hicks; Pete Rubi, Thomas Rallis, and Emojean Girard, Justices of the Peace; Pima County Justice Court, in their official capacities, on behalf of all other public officials similarly situated, Defendants.

No. CIV 84–003 TUC ACM.

United States District Court,
D. Arizona,
Tucson Division.

April 19, 1985.

Charles Pyle, William E. Morris, Southern Arizona Legal Aid, Tucson, Ariz., for plaintiffs.

Stanley M. Hammerman, Phoenix, Ariz., for Century Finance.

Michael D. Alfred, Pima County Attorney's Office, Civ. Div., Tucson, Ariz., for Pima County Justice Court, defendants.

Earl E. Weeks, Streich, Lang, Weeks & Cardon, Phoenix, Ariz., for defendant First Interstate Bank.

Charles Sullivan, Tucson, Ariz., for defendant Bonnie Brae Nursing Home.

Michael M. Neal, Tucson, Ariz., for defendant Doctor's Business Bureau.

Anthony B. Ching, Arizona Atty. General's Office, Phoenix, Ariz., for defendant Alan E. Maguire.

MARQUEZ, District Judge.

This class action involves a challenge to the Arizona post-judgment garnishment procedures, A.R.S. § 12–1571 *et seq.*, as being violative of Article 6, clause 2 (the Supremacy clause) and the 14th amendment (due process clause) to the United States Constitution.

This matter is before the court on cross motions for summary judgment.

## I

## BACKGROUND

Plaintiff Anita Neeley financed the purchase of an automobile with defendant Century Finance Company.. Following a default in the repayment of the indebtedness, Century Finance filed suit in Pima County Justice Court and obtained a default judgment against Neeley. All attempts at voluntary payment of the debt failed and Century resorted to the garnishment of Neeley's wages to seek satisfaction of its judgment.

Plaintiff Marcus Martin became indebted to individual defendant Lydia Marie Hicks.[1] Ms. Hicks reduced the debt to judgment in the Pima County Justice Courts. In an

---

1. Defendant Hicks has never been served in this action.

effort to satisfy the judgment, Hicks caused a writ of garnishment to be served on First Interstate Bank. First Interstate withheld funds from Martin's bank account under the writ.

Plaintiff Carmen Orozco had her wages attached under a writ of garnishment served upon her employer, the State of Arizona. As a result of the garnishment, wages were withheld from her pay. The writ was issued in order to attempt satisfaction of a judgment in favor of Doctors Business Bureau and against, among others, Steven and Carmen Orozco. The garnishment of plaintiff Orozco's wages was improper because the Carmen Orozco who is the plaintiff herein is not the same Carmen Orozco who was the defendant in the underlying state court action.

As a result of these actions, plaintiffs filed suit against the judgment creditors, the garnishees and the justices of the peace who had granted the writs of garnishment herein involved. The complaint was framed as a class action for both plaintiffs and defendants and sought, among other things, a declaration that the Arizona post-judgment garnishment procedures as set forth in statutes was violative of the United States Constitution in several respects.

Following a hearing at which several of the defendants participated, this court, on April 25, 1984 certified this action as a class action as to both plaintiffs and defendants under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. The plaintiffs class consists of the named plaintiffs as well as all persons who have or will have writs of garnishment issued against them by any justice of the peace or by any clerk of the Superior Court of the State of Arizona. The defendants class consists of the named defendants plus all clerks of the superior court of the State of Arizona and all justices of the peace in the State of Arizona.

On September 25, 1984, the plaintiffs filed a motion for summary judgment as to

claims based on federal law, the present motion. On November 19, 1984, defendant Century Finance filed its opposition to the motion and in the same pleading filed its cross motion for summary judgment. No other defendant[2] including those represented by the Arizona Attorney General's office and the Pima County Attorney's office filed any opposition to the plaintiff's motion for summary judgment. Under Rule 11(h) of this court's Local Rules of Practice, the failure to file a responsive pleading to a motion is deemed to be a consent to that motion. On December 6, 1984 this court issued an order holding that all defendants in the class except Century Finance were deemed to have consented to the granting of plaintiff's motion declaring the Arizona statutes unconstitutional. As the defaulting defendants included officials of the State of Arizona, holding that the statute is unconstitutional in this matter is appropriate. None of the defaulting parties have moved to set aside the order or to seek reconsideration.

As to defendant Century Finance, a determination on the merits is appropriate. On January 17, 1985, attorneys representing several clients who actively engage in garnishment practice sought leave to intervene as amicus curiae as to the constitutional questions involved herein. Due to the serious nature of the issues involved, this court granted the motion for leave to file an amicus brief. Their brief and the plaintiff's response to it have been filed and considered by the court.

## II

### PRELIMINARY CONSIDERATIONS

Defendant Century Finance and the amicus brief have raised two issues which require determination prior to an examination of the constitutional validity of the state statutes. Those issues are whether or not this court should abstain from hearing the case and whether or not the intervening

---

**2.** Defendants First Interstate Bank, Alan E. McGuire and Doctors Business Bureau have resolved the allegations against them with regard

to the individual named plaintiffs and have been dismissed from this action.

acts of the Arizona legislature adopting various changes in the garnishment procedure since the filing of this suit render this action moot.

■ *Abstention* This court has been requested to abstain from ruling on the merits of this case under the doctrine set forth in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Under that doctrine, the federal courts will withhold analysis of state law under the United States Constitution when a state court's interpretation of state law would make an analysis under the Constitution unnecessary. Cases involving this type of abstention concern issues where state law is unresolved, unclear or ambiguous. None of these situations is present here.

■ The state law involved in this matter is statutory. None of the statutes involved contain language which is ambiguous or capable of differing interpretations. None of the parties has set forth any question of state law which would render constitutional analysis of this statutory scheme unnecessary. The *amicus* brief contends that merely by virtue of the fact that the statutes involved in this action were amended during the pendency of the suit, the newness itself should require abstention. This court disagrees.

Waiting to determine how the recently enacted statutes will be applied is not appropriate. The present challenge to the garnishment scheme is based on whether the statutes, on their face, meet constitutional requirements. The method of application of the statutes is irrelevant. In addition, there is no case or other authority cited in support of the *amicus* position that newness alone requires abstention. This court's own research has failed to find any such holding.

■ The only conceivable analysis of these statutes under state law which could apply is the interpretation of the state constitution. The doctrine of abstention does not require a withholding of decision pending analysis by another court of constitu-

tional questions particularly when the issues would be identical to those presented here. *Brown v. Liberty Loan Corp. of Duval*, 539 F.2d 1355, 1362 (5th Cir.1976). *See also, Wisconsin v. Constantineau*, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515, 520 (1971).

Abstention under *Pullman* is not appropriate. The request for abstention is denied.

■ *Is this action moot?* Following the filing of this action, the Arizona legislature enacted into law several amendments to the post-judgment garnishment statutes. The defendants and *amicus* contend that those amendments render this action moot. Their contention is incorrect. A constitutional violation becomes moot when (1) the alleged violation has ceased and there is no reasonable expectation that it will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violations. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642, 649 (1979), *Finberg v. Sullivan*, 658 F.2d 93, 97 (3d Cir.1980) [*Finberg II*].

■ The uncontroverted affidavits of Plaintiffs Neeley and Martin establish that both plaintiffs are still indebted to their judgment creditors and the judgments remain unsatisfied. It is to be anticipated that the plaintiffs will be subjected in the near future, if not the present, to garnishments of their wages and deposit accounts. Plaintiffs contend that the defects to which they raise objections were not cured by the legislative changes and their objections apply equally to the recently enacted statutes. It cannot be concluded that the constitutional violations alleged in this matter, if established, will not recur. As to these plaintiffs, the action cannot be considered moot.

As to plaintiff Orozco, since her allegations arose because of a mistake in identity, it is not evident that she will again be subjected to garnishment. The court will therefore concentrate its analysis on the

objections as to plaintiffs Neeley, Martin and similar class members.

## III

## OBJECTIONS TO THE POST-JUDGMENT GARNISHMENT PROCEDURES

At the time this suit was filed, the garnishment procedure did not require that the judgment debtor be given any notification that a writ of garnishment had been served, that the garnishee was withholding wages or property or any other notification. *See,* former A.R.S. § 12–1574(C). After this class action suit was commenced, the Arizona garnishment statutes were amended.

It is the lack of notice that prompted the initiation of this suit. All parties agree, however, that the statutory scheme subject to this court's analysis is the present existing procedures rather than the procedures set forth prior to the amendments. In their motion for summary judgment, plaintiffs renew their objections to the Arizona statutory scheme based on the system's overall lack of notice.

Plaintiffs contend that since the present system fails to require service of the writ of garnishment, it is defective. A.R.S. § 12–1580 requires the garnishee to serve its *answer* to the writ upon the judgment debtor, but there is no requirement of service of the writ itself.

Plaintiffs second objection to the procedure is that the statutory notice of exemptions is not only misleading, it is erroneous. A.R.S. § 12–1579(C) requires that the judgment debtor be given notice "in substantially the following form:"

You are hereby notified that this court gave (*name of creditor*) a right to some of your property as described in the answer to the writ of garnishment....

Plaintiffs objections to this notice provision are twofold. First, the writ of garnishment is not an order of court but a pleading by an adversary party. As such, it is not correct that a court has given a right to the property at the time the notice is served.

Second, by notifying the judgment debtor that the court has already given a right to the property as described in the answer, the judgment debtor may not pursue his rights under various federal and state exemption statutes. This will have the effect of chilling the debtors assertion of his exemption rights.

Plaintiffs third objection to the statutory scheme is that the system provides no notice as to what procedures must be followed to challenge the garnishment. A.R.S. § 12–1579(C), the pertinent statute involved in this objection states:

... If you believe this order is improper or unlawful, that your property is exempt by law or that the answer of the garnishee is incorrect, you may request a hearing before this court pursuant to Arizona Revised Statutes § 12–1589. You must request the hearing no later than the twentieth day after you receive the answer of the garnishee.

Plaintiffs' objection is that by referring to a statute by number rather than setting forth in detail its requirements, some debtors are precluded from being able to follow the mandatory procedures because they are not versed in reading and understanding statutes. The requirements of A.R.S. § 12–1589(A) are that the legal and/or factual disputes must be set forth in the written objection, the objection must specifically request a hearing and it must be accompanied by an affidavit. The statute also requires service of the objections on all parties involved.

The fourth objection is that the statutory notice of exemptions does not identify any particular exemption nor does it refer to the federal statutes which provide the exemptions. The applicable notice provided the debtor is found also in A.R.S. § 12–1579(C). That portion of the notice states in its entirety: "Notice: Federal and state laws provide that certain of your assets and earnings are exempt from garnishment."

The fifth objection to the scheme is that the procedure does not provide a prompt post-seizure hearing. As the system now exists, the assets are seized immediately upon service of the writ upon the garnishee. The first official notice of the garnishment to the debtor is given in the garnishee's service of the answer on the judgment debtor. The garnishee has 20 days from the date of receiving the writ to the date his answer must be filed. The debtor is then given 20 days in which to file his or her objections. A.R.S. § 12–1589(B) requires the hearing to be commenced within 14 days of the request but may be continued for cause on any terms the court deems appropriate. All parties to the garnishment must also be given notice of the hearing date at least 5 days prior to the hearing. Plaintiffs complain that this results in property being seized for an extensive period of time without judicial review.

Plaintiffs final objections concern the recently enacted provisions in the statute which allow a "continuing" garnishment of wages upon the service of a single writ, A.R.S. § 12–1590(A). The only notice given to the judgment debtor that his or her wages will be repeatedly taken appears in the third paragraph of the notice provision in A.R.S. § 12–1579(C) which states: "Also, if your earnings were garnished, the deductions will continue until the debt is paid." The scheme does not require notice be given the debtor other than the original answer of the garnishee and quarterly reports by the garnishor/judgment creditor as to the amount withheld and its application to the indebtedness, A.R.S. § 12–1590(B). Although the statute provides a sanction against the creditor for failure to follow the statutory requirements, § 12–1590(E), no provision in the statutory scheme sets forth the manner and timeliness requirements for the objection to be filed nor is there any prompt hearing requirement other than for the initial objection.

All of these objections are based on two theories. The first is that the Arizona procedure violates the Supremacy clause of the United States Constitution in that federal statutes provide various exemptions for certain types of property including but not limited to wages, social security benefits, supplemental security income benefits, various pension benefits, etc. Because of the objections listed above, the Arizona scheme fails to adequately protect the federal statutory exemptions.

The second theory asserted is that the statutory scheme does not comply with the due process clause of the 14th amendment in that inadequate notice is given as to the exemptions and of the garnishment itself so that the procedure is calculated to preclude judgment debtors from seeking exemptions to which they are lawfully entitled. The plaintiffs also contend that the excessive time lapse before the exemptions are considered by the court denies the debtors of the opportunity to be heard within a reasonable period of time.

Defendant Century Finance's cross motion contends that the Arizona statutes satisfy the requirements of the Constitution. They argue that because the statutes are valid, Century Finance's activities in the garnishment of plaintiff Neeley's wages were proper and as a result, the plaintiff must be denied relief in this action.

IV

THE APPLICABLE LAW

This court is bound to first consider any statutory argument prior to the interpretation of constitutional issues. Although both challenges here are based on constitutional grounds, the crux of the Supremacy clause argument is a comparison of state law with federal statutes. This issue should normally be resolved first. *See, Hagans v. Lavine,* 415 U.S. 528, 549, 94 S.Ct. 1372, 1385, 39 L.Ed.2d 577, 595 (1974). However, the substantive due process claim is based on both state and federal law. Consideration of the Supremacy clause issue will therefore not be dispositive of the entire case. For the reasons set forth in *Finberg v. Sullivan,* 634 F.2d 50, 56 (3d Cir.1980) [*Finberg I*], consideration

of the due process argument is more appropriate for resolution first.

Defendants contend that no due process is required at all in a post judgment garnishment situation. In *Endicott-Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924), the Supreme Court held that there was no requirement of notice and an opportunity to be heard on matters concerning post-judgment garnishment. This is based on the holding that because the debtor has already been given due process in the underlying court proceedings that resulted in the entry of judgment against him, no further due process requirements are present. The debtor has already had his day in court. This case has never been overruled by the Supreme Court and must still be considered the law.

At least two courts have held that the *Endicott-Johnson* case should no longer be considered applicable where some of the debtor's property, including monetary assets, are exempt from attachment to satisfy debts. These exemption statutes have primarily come into existence after the decision in *Endicott-Johnson* was handed down. *See, Deary v. Guardian Loan Co., Inc.*, 534 F.Supp. 1178, 1185 (S.D.N.Y.1982) and *Finberg v. Sullivan*, 634 F.2d 50, 56–57 (3d Cir.1980).

In addition to the exemption statutes, both the *Deary* court and the *Finberg I* court found persuasive the Supreme Court opinions in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W.T. Grant, Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); and *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). These cases all involved constitutional objections to various state laws permitting *pre-judgment* seizure of property. The basic rulings of these cases are that wages cannot be seized without notice and an opportunity to be heard prior to their seizure as security for a claim not yet reduced to judgment.

Other assets and property can be seized prior to a hearing provided the debtor is given immediate notice of the action and the opportunity to have the matter litigated in court very promptly after the seizure occurred. These safeguards were held necessary in order to protect the debtors interest in the continued use of his property.

This court accepts the conclusions of the *Deary* and *Finberg I* courts that these pre-judgment cases can be interpreted as an indication of a change in the law since *Endicott-Johnson*. They may cast doubt on the continuing validity of the holding. None of those cases contained any citation to *Endicott-Johnson* nor is there reference to its holding. This court, however, is not willing to ignore the holding in that case due to the pre-judgment holdings. If *Endicott-Johnson* is to be considered no longer the law, it is the Supreme Court that must declare such a result.

There can be no doubt that the various federal and state exemption statutes are designed to protect certain assets against creditor's claims. These statutes create a protected property interest which requires a certain amount of due process prior to its deprivation. This court considers the *Endicott-Johnson* holding as not being applicable in those situations where a specific statute, either state or federal, precludes certain assets from being subjected to liability for a person's debts. In any situation where no exemption could possibly apply, the holding of *Endicott-Johnson* must be applied and the procedure upheld under due process analysis as no further due process is required.

In accordance with this conclusion, it must be further concluded that the Arizona procedures are in compliance with due process as they apply to business debts and the assets of a business. Although none of the named plaintiffs incurred a debt in the operation of a business, this court certified the plaintiffs class as all persons presently and in the future subject to garnishment proceedings. No party has cited any exemption under state or federal law that applies to the monetary assets of a busi-

ness entity. Accordingly, the Arizona procedures as they now exist satisfy the holding in *Endicott-Johnson* and are not constitutionally defective with regard to these business assets.

As to an individual debtor, various state and federal statutes mandate that certain assets are exempt from debt collection activities. As to individual debtors and these types of assets, the *Endicott-Johnson* holding is inapplicable and it is necessary to determine whether the Arizona procedures comply with due process requirements.

■ This court is in agreement with the Third Circuit in *Finberg I* and the District Court in *Deary* that the proper test in determining if due process is satisfied is a balancing of the competing interests to the property. *See, Brown v. Liberty Loan Corp.*, 539 F.2d 1355, 1365 (5th Cir.1976) *cert. denied*, 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1977) and *Finberg I, supra*, 634 F.2d at 58. .

Every pleading in this matter is replete with emotional arguments that attempt to establish that the diligent innocent creditor's interests outweigh the interests of the defaulting debtor, or that the assets necessary for the basics of food, clothing and shelter for the poor helpless debtor make the debtor's interests superior to that of the ruthless creditor. This court is fully aware of the consequences of this ruling and has considered every argument on each side as a factor in the balancing of the interests in this case.

It is important to note that the garnishment scenario is not merely an action between the creditor and debtor. These proceedings also involve a third party who is suddenly thrust into the middle of the dispute and may be subject to substantial penalties. *See,* A.R.S. § 12–1583 (allows judgment against defaulting garnishee for full amount of judgment debt). These extensive penalties can be imposed when in fact the only relationship the garnishee has to the action is that they are the employer of the debtor or the debtor is one of a multitude of depositors with their financial institution. For this reason, it is also appropriate to include the interests of the garnishee in the balancing process.

The judgment creditor must be considered to have a substantial interest in the property involved in a garnishment action. The debtor, either by voluntary action or tortious conduct, has become indebted to the creditor. The creditor, at the post-judgment stage, has already pursued the matter through the judicial system all the way to the point of entry of judgment. The debtor is presumably unwilling to voluntarily pay the debt which a court of law has ruled is actually owed. The judgment creditor's interest in obtaining that to which a court has already indicated he has a right to without substantial delays and excessive costs demonstrates that the debtors due process rights at this stage may be minimal. As ruled herein above, absent a specific statute exempting the assets from seizure, the debtors interest may be almost non-existent.

The debtor's interest where a statute provides an exemption must also be considered significant. It is presumed that these statutes are enacted in the interest of sound public policy. These statutes completely destroy any interest of the creditor in the particular exempted asset.

The garnishee's interest in the asset itself is nonexistent. This third party, however, does have an interest in resolving the dispute to which he has become a central participant without being forced to incur substantial expenses or spend excessive amounts of time.

It is with these competing interests in mind that the Arizona statutory procedure is examined to determine " 'the probable value, if any, of additional or substitute procedural safeguards' and the 'fiscal and administrative burdens that the additional or substitute procedural requirements would entail.' " *Finberg I, supra*, 634 F.2d at 58 *quoting Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976). At the minimum, however, "the available procedures must afford the

debtor adequate protection against erroneous or arbitrary seizures." *Id.*

## V

### MERITS OF PLAINTIFF'S MOTION

*Failure to Serve the Writ*

The Supreme Court has held that the required notice to be given when substantial rights are involved, is that which is "reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950).

As stated above, the only official notice received by the debtor of the garnishment action is when the garnishee serves the answer to the writ. Defendants argue that service of the writ is not required. They contend that since the judgment debtor is aware of the debt, and was served in the underlying action, the service of the writ would add little. The judgment debtor can be considered to know who is attacking his assets and the reason for the attack.

■ This argument has some merit. It is the basic argument resulting from *Endicott-Johnson, supra.* However, if the assets are potentially exempt from seizure, the underlying judgment is of little concern. The issue at this stage is not whether the debt is owed, but whether the creditor is able to seek satisfaction of the indebtedness from this particular asset. The fact of service in the underlying claim is of little consequence in the garnishment setting. Although far better than the lack of notice provisions of the previous statute, the current notice is still constitutionally defective. The protections found in some of the exemption provisions for assets that could be kept in bank accounts (social security benefits 42 U.S.C. § 407, supplemental security income benefits 42 U.S.C. § 1383, veteran benefits 38 U.S.C. § 3101, and provisions in A.R.S. § 33–1126(7) to

name a few) can be ascertained from the moment the account is seized. Yet, at least 20 days may pass before the judgment debtor receives notice of who is freezing the account and for what reason. Service of the writ itself will provide the necessary information for the debtor to be able to immediately assert his exemption rights. Service of the writ is required in order for the debtor to be adequately apprised of the interests at stake. In situations where the exemptions can be determined immediately upon service of the writ (rather than instances where the answer determines the existence of exemption matters such as wages), the debtor's time period for asserting his objections could begin to run immediately. This would bring the matter to the court at a much quicker pace. The additional requirement that the writ be served on the judgment debtor at the time it is served on the garnishee or shortly thereafter imposes a small burden while increasing the benefits to all parties.

Wages are an asset subject to stronger exemption protection. This is indicated by the federal exemption statute 15 U.S.C. § 1673 and the identical state provision, A.R.S. § 33–1131, which provide that rather than a minimal amount of the asset being protected, only a minimal amount of the wage is subject to garnishment. The added protection given to wages is also evident in the pre-judgment attachment case *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). *See also, Usery v. First National Bank of Arizona,* 586 F.2d 107 (9th Cir. 1978); and *Brown v. Liberty Loan Corp. of Duval,* 392 F.Supp. 1023 (D.Fla.1974), *reversed on other grounds,* 539 F.2d 1355 (5th Cir.1976). Under the existing state system, several pay periods may elapse before the judgment debtor receives notice of the garnishment other than a reduction in the wages he receives. The number of pay periods passing prior to receipt of notice differs depending on whether the employee is paid weekly, bi-monthly or monthly. Although the debtor is "notified" that some action is occurring with regard to his earn-

ings due to the reduced amount received, wages are entitled to greater protection than other assets and this present notice is insufficient. This also reduces the delay in resolving the problems presented by the allegations pertaining to plaintiff Orozco. Service of the writ would give immediate notice to this type of "debtor" that an improper attack on her wages is occurring and provides sufficient information for her to be able to promptly seek release of the assets. Accordingly, the writ must also be served upon the judgment debtor at the time it is served on the garnishee or very shortly thereafter.

The court makes no ruling as to whether the judgment creditor or the garnishee should be responsible for serving the writ on the judgment debtor and what manner of service is sufficient. The court defers to the sound collective wisdom of the state legislature to decide these issues so as to accomplish the purposes of due process with minimal increased burdens to the three parties involved in a garnishment. The court will not go beyond the holding that service of the writ itself is required.

### Misleading notice

■ Plaintiffs contend that the notice provision in A.R.S. § 12–1579(C) stating that a court has already held the garnishor is entitled to the property is misleading and invalid. This court disagrees. Although the notice in the statute is technically incorrect and poorly worded, it is not constitutionally defective. Accompanying the statement that a creditor has already been given a "right" to the debtor's property is a further notice that some property is exempt and further notice that there is a procedure to protect this exemption. These subsequent statements cure the effect, if any, of the original misstatement. Additionally, because this is a post-judgment matter, it is true that a court has already held that a judgment creditor is in fact entitled to some property of the judgment debtor. The misstatement is not so infirm as to violate the constitution of the United States.

### Vagueness in the Notice Concerning Exemptions

■ A.R.S. § 12–1579(C), second paragraph, states in its entirety: "Note: Federal and state laws provide that certain of your assets and earnings are exempt from garnishment." The defendants contend that this notice coupled with the sheet of instructions given to the garnishee concerning the calculation of the wage garnishment amount is sufficient. That position is not correct. Nothing in the record indicates that the judgment debtor ever receives the garnishee's set of instructions nor does the statute even require that the garnishee receive this instruction sheet. Notice "reasonably calculated to afford an opportunity to present objections" requires that whenever wages are the subject of the garnishment, the debtor must receive notice of the exemptions. Under these circumstances, there is but one federal statutory exemption provision, 15 U.S.C. § 1673, and the identical state provision, A.R.S. § 33–1131. This provision sets forth a formula for alternative withholdings. Only the smaller of these calculations is permitted to be withheld. At a minimum, the debtor must be provided the statutory citation to the exemption statute as well as the alternative formulas. It is for the legislature to determine if the statute should be quoted verbatim or whether a paraphrase will provide adequate notice of the statute's contents. Because the debtor will not be able to determine which alternative was used by his employer until the answer is filed, it is also necessary that the debtor be served with the answer.

Several federal and state statutory exemptions could possibly apply to funds held in bank accounts and other similar deposit accounts. A detailed listing of these exemptions would result in the notice being very voluminous. The notice would be so lengthy that it is doubtful the debtor would or could read it and the cost would increase significantly, especially if the notice were in both English and Spanish. To require every possible exemption to be listed on the notice would increase the burden without

adding any benefit to the system. *See, Finberg v. Sullivan,* 634 F.2d at 82–84 (Aldisert, J., dissenting) and *Deary, supra,* 534 F.Supp. at 1182 n. 6. Due process does not require that all exemption statutes be identified and set forth in detail. What statutory provisions should be set forth either by number alone or in detail is a matter for the legislature to determine. Those exemptions that occur frequently should be included in the notice. As the Third Circuit stated in *Finberg I:*

> Knowledge of these exemptions is not widespread, and a judgment debtor may not be able to consult a lawyer before the freeze on a bank account begins to cause serious hardships. These problems are probably most acute for those judgment debtors who have few immediate sources of necessary funds other than money held in a bank account. Notice of these matters can prevent serious, undue hardship for the judgment debtor whose lack of information otherwise would cause delay or neglect in filing a claim of objection.

534 F.2d at 62.

This court is not deciding, other than for wages, what particular exemptions must be identified. It is sufficient to state that a notice form that fails to identify any exemption, including one seemingly possible in every bank account situation, see A.R.S. § 33–1126(7), is not reasonably calculated to give debtors an opportunity to present their objections. The present statutory notice does exactly that, it fails to identify *any* possible exemption. For that reason, it violates the due process clause of the 14th amendment.

*Notice of the Procedures for Obtaining Judicial Review*

Plaintiffs object to the wording of the statutory notice in A.R.S. § 12–1579(C) as to the procedures necessary to obtain judicial review of the claimed exemptions. The notice does not set forth in detail the necessary procedures to follow but refers to A.R.S. § 12–1589. That statute contains the requirements necessary to obtain a hearing.

In *Deary,* the New York post-judgment garnishment scheme was struck down because it failed to provide any notice of the exemptions, the procedures for asserting the exemptions and no notice was given of the garnishment. That court required that the procedures to obtain judicial review be set forth in the notice required with the writ. In *Finberg I,* the court noted that "notice that informs the debtor ... of the procedure for claiming these exemptions would provide substantial protection to the debtor's interest in having funds available for basic necessities." 634 F.2d at 62.

Neither *Finberg I* nor *Deary* involved a notice provision that referred to another statute containing the detailed procedural requirements. The systems under scrutiny provided no notice whatsoever.

This court has already held that the constitution requires setting forth in detail the federal statutory exemption alternative tests for wages in the notice of garnishment. This is based on the previous discussion that wages should be given added protection. The pleadings · also indicate that the garnishment of wages is one of the more common, most successful methods of obtaining satisfaction of a judgment. This is particularly true since under the Arizona scheme, a single writ of garnishment acts as a continuing garnishment on all future wages (subject to only a few limitations) from the employer until such time as the entire judgment is satisfied. Because of the substantial effects of the writ on wages, due process requires that the procedures to seek judicial review of the garnishment be set forth in detail.

The same is true with regard to deposit accounts. Certain exempt assets such as social security benefits are frequently kept in bank accounts. In fact, the federal government encourages recipients to participate in direct deposit programs to protect their benefits. Although this court has held that not every conceivable exemption provision must be included in a garnishment notice, those that must be included are the ones applicable to a significant number of people. Some of the exemption

provisions apply to very large numbers of people in Arizona. Significant impact will result when the recipient of this type of exempt benefits has them frozen in a bank.

The procedural requirements to obtain a post seizure review of exemption claims are not substantial. The debtor need only state their claim of exemption, a specific request for a hearing and an accompanying affidavit. Very little burden would result from the slight increase in the notice form, yet the debtor would gain substantial benefit from the ability to quickly request a judicial review of claims of exemption. In addition, the creditor also benefits from this requirement. If the debtor is provided the necessary information to seek review of the exemptions, the claim can be filed without the delays caused by attempting to engage in legal research. Exemption claims can be filed more quickly, resulting in a decision by the court at a speedier pace than the present system allows.

The added burden of increasing the notice provision is far outweighed by the benefit to the debtor in being able to seek quick judicial review of an improper garnishment. Because the Arizona statutes do not provide this protection, they are in violation of the due process clause of the 14th amendment.

*Prompt post-seizure judicial review*

■ Due process requires that where exempt assets are seized under a garnishment proceeding, the matter must be heard before a court within a meaningful time. *Finberg I, supra,* 634 F.2d at 59. Under the existing Arizona scheme as was discussed at oral argument on these motions, once the garnishee receives the writ, 20 days are permitted before the answer is required. A.R.S. § 12–1589(A) then allows the debtor 20 days in which to file his objections. A.R.S. § 12–1589(B) requires that the hearing on the objections must be *commenced* within 14 days of the request for hearing. The court, however, is given discretion to continue the hearing for "cause" on "any terms the court deems appropriate." A.R.S. § 12–1589(C) requires the party requesting a hearing to serve notice on all interested parties of the place and time scheduled not less than five days prior to the hearing.

§ 12–1578(E) requires the return of the debtors property if after 90 days from the date of the garnishee's answer, no judgment is entered ordering the release of these funds to the garnishor. This 90 day period is specifically excluded whenever any party files an objection to the answer. It also does not apply if the answer involves only wages of the judgment debtor.

Plaintiffs raise several objections to these time period provisions. They contend that they are excessive and that due to the operations of the justice courts, the notice requirements cannot be met.

With regard to the conditions of the operation of the justice courts, the pleadings in this matter indicate very serious problems. Affidavits indicate that files in garnishment matters are not maintained in any orderly fashion, pleadings are missing and that hearings are often set in such a manner that the five day notice provision is difficult to meet. These problems raise significant questions of the validity of the state court's activities. This court's review is limited to a challenge of the statutory scheme as it stands on its face rather than its actual application. These issues are more appropriately left to the review and consideration of the state legislature and state courts.

No party has cited a case holding that a specific time period from the attachment of the garnishment to a decision by the court is valid. Compliance with the previous holdings in this order will shorten the time periods necessary to obtain judicial review, i.e. if a bank account contains proceeds such as pension benefits protectable under 29 U.S.C. § 1056(d) and 45 U.S.C. § 231m, the debtor would be able to assert his claim immediately upon receipt of the writ. This result occurs because it is doubtful that the financial institution will have records indicating where the deposit source came from, and therefore, no matter what the answer states, the debtor will be the sole protector of the exemption rights. As to other as-

sets, the debtor would need to wait for the answer of the garnishee to determine if the exemption was correctly applied.

In *Finberg I, supra,* the state procedure allowed the creditor to wait 15 days before filing its response to the claimed exemption, discovery procedures could also have substantially delayed the resolution of the matter for months. The procedure challenged in *Deary* did not specify time limitations.

Plaintiffs cite the case of *Stypmann v. City and County of San Francisco,* 557 F.2d 1338 (9th Cir.1977) holding that a five day period between seizure and hearing is excessive where the debtor has a substantial interest in the continued possession of the property, an automobile. Although plaintiffs concede that 5 days may not be a sufficient amount of time, they do not suggest an alternative period. This court will not state a maximum period of time that is constitutionally sufficient, but will consider only whether the present time periods provide adequate protection under the balancing test.

In making this determination, the interests of the third party garnishee must be given more consideration. At present, they receive 20 days in which to answer the writ. It is obvious that they must be given some time to check records, make calculations, etc. It was also pointed out at oral arguments that many out of state corporations transacting business in Arizona use a private in-state service to act as their agent for service of process. This can result in delays in forwarding the writ to the actual employees of the garnishee responsible for making the determinations required to enforce a writ. In addition, since this forwarding activity is often by the use of the United States mails, the receipt of the writ is further delayed for a short period of time.

■ Some reasonable time is necessary between the time the garnishee receives the writ and the time its answer is filed. 20 days, however, is excessive. Where wages are garnished, three weekly pay periods could elapse prior to the debtor

being advised that only the minimum amount permitted under the statutes has in fact been withheld from the first pay period under the writ. This coupled with a possible 14 day wait for a hearing leads to a delay of over one month, even if the debtor immediately requests a hearing. This involves multiple pay periods for both the weekly earner and the bi-monthly earner.

As to other assets, the period of time permitted to answer is also excessive. Banks presumably are aware of the state statutory exemptions under A.R.S. § 33–1126(7) for an account and can quickly determine its application. The holder of funds will probably not be aware that the funds deposited may be social security benefits or other protected assets. There is also less effort entailed in examining account records to determine the existence of an indebtedness. Because the procedure provides for excessive delay by the garnishee, it fails to comport with the requirements of the 14th amendment.

Under the present scheme, the debtor is given 20 days to file an objection to the garnishee's answer. Since the debtor is at liberty to file his assertion of exemption rights at anytime during that 20 day period, any delay in access to exempt funds during this period is in effect a voluntary denial by the debtor's own inactivity. There is no challenge to this time period and the court need not address its validity.

■ As the present system exists, the hearing must be commenced between 5 days after the request (the necessary notice period A.R.S. § 12–1589(C)) and the 14th day after the request. This particular period of time is adequate to allow all parties to receive notice and prepare for the hearing and to allow the courts some control over their calenders. This provision is not constitutionally defective.

■ A different conclusion is required in the examination of A.R.S. § 12–1589(B) allowing the court to continue the hearing for "cause" on any terms the court considers appropriate. In such an instance, the

90 day limit of A.R.S. § 12–1578(E) is inapplicable. There is no definition of "cause" provided in the statute and the courts could conceivably put off determination of the exemption question for an indefinite period. This provision could add substantial time to the already potentially lengthy process, and it must be struck down. The courts must be given some discretion in extending the resolution of the exemption hearing but the exclusion from the 90 day maximum period indicates clear potential for significant delay in the process. This delay would adversely affect the rights of both debtor and creditor and is invalid. This court makes no ruling whether the 90 day maximum time period, if applied to this provision, would or would not meet the requirements of due process.

■ Plaintiffs challenge the 90 day period in A.R.S. § 12–1578 as being "plainly untenable." This court disagrees. That provision allows the release of funds under $200.00 to the judgment debtor when the garnishor fails to obtain a judgment ordering the release of the funds. This period applies only when no objection to the garnishee's answer has been filed. Under the circumstances the judgment debtor can be considered to have no exemption rights or to have waived any claim to exemptions he may have had. This provision acts more as a punishment to the dilatory creditor than a protection of the judgment debtor. Because no exemptions apply in such a situation, the statute comes under the scrutiny of *Endicott-Johnson.* Accordingly, this provision does not violate the constitutional provisions.

Plaintiffs request this court to apply the doctrine of *Stypmann, supra,* that the timeliness of the hearing should be determined from the start of the procedure rather than from the time the party has requested the hearing. The rulings in this case regarding the time delays involved if considered as a whole indicate that due process requires a shorter overall time period than that provided at this time. This court is unwilling to examine the system to set a maximum time period due to the significant period of time given the debtor to seek his exemptions. It is for the legislature, not the courts, to decide what if any maximum time period should be permitted. It is also apparent that the shortening of the time frame will benefit not only the debtor but also the creditor. Access to exempt funds will be possible in a shorter time period and the creditors access to nonexempt funds will be possible at a quicker pace.

*Continuing wage garnishment*

After the filing of this suit, the state enacted a significant change in the procedures concerning the garnishment of wages. Plaintiff Neeley's objections are based on wage garnishment activities and since she is still subject to an unsatisfied judgment against her and her judgment creditor has actively pursued the defense of the statutes in this case, it appears likely that she will have her wages subject to garnishment in the future and will be subjected to the provisions of this statute.

Plaintiffs do not claim that the concept of a continuing wage garnishment provision is a violation in and of itself. Rather, the attack is based on the same lack of notice and opportunity to be heard in a meaningful time arguments that were made against the other statutory provisions. The rulings above should resolve some of the problems with the continuing wage garnishment scheme, particularly the notice requirements, the service requirement and the shortened time frame requirement.

■ Plaintiffs allege other defects in the continuing wage garnishment statute. Following the initial attachment of the writ, the only other notice the debtor receives as to the computation of the wage exemption is the quarterly report required under A.R.S. § 12–1590(B). The report, filed by the garnishor, must include a statement of the payments applied to the judgment and the balance due. It does not indicate each successive pay period's garnishment withholdings nor under which of the alternative formulas the amount withheld was obtained and most importantly,

the garnishment statutes contain no provision for the debtor to seek judicial review of an incorrect garnishment for a particular pay period. There is also no procedure set forth in the statutes for making an objection to the quarterly report, only the initial attack on the writ.

These deficiencies invalidate this provision. Because the interest in wages is so significant, greater protection must be afforded the exempt property. A fluctuation in wages could result in the need to apply the different formula in 15 U.S.C. § 1673. At the minimum, the debtor must be informed in each pay period the amount withheld under the continuing writ and which alternative was used in the determination of this amount. The garnishee will already have made the calculations in this regard and little increased cost will be involved.

■■■ In addition, the requirements of due process resulting from the strong statutory protections given to wages necessitate an opportunity to raise an objection to the incorrect application of the exemption statute "at a meaningful time and in a meaningful manner." *Stypmann, supra,* at 1344 *quoting Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32 (1976). The statute provides no such opportunity, and cannot survive constitutional scrutiny.

## SUPREMACY CLAUSE

Plaintiffs contend that in addition to violations of due process, the Arizona post-judgment statutory scheme allows assets exempt under federal law to be seized and either withheld for a substantial period of time or to be used to bypass the exemption statutes altogether.

■■■ This court finds the analysis of both the *Finberg I* and *Deary* courts persuasive on this point. The test to determine a violation of the Supremacy clause is found in *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). The state law is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.,* at 67, 61 S.Ct. at 404, 85 L.Ed. at 587.

The objective of exempting social security benefits is the "protection of its beneficiaries from some of the hardships of existence." *United States v. Silk,* 331 U.S. 704, 711, 67 S.Ct. 1463, 1467, 91 L.Ed. 1757, 1766 (1947). The statute protecting wages, 15 U.S.C. § 1673 was enacted in order to protect the consumer from bankruptcy rather than as a statute to protect creditors rights. It was designed to allow the debtor to have a means of continued support for himself and his family. *See,* 15 U.S.C. § 1671 and *Long Island Trust Co. v. United States Postal Service,* 647 F.2d 336, 339–340 (2d Cir.1981). Similar objectives can be found in the legislative histories of other federal exemption statutes.

■■■ The state post-judgment garnishment scheme permits excessive interference with these Congressional objectives. The system allows a long term denial of the debtor's access to benefits and assets to which the creditor has been denied all legal right by Congress. The statutes do not inform the debtor that the assets under garnishment may be exempt from debt collection activities or even that the assets have been seized until possibly 20 days later. The debtor is further denied a review of the garnishment action at a meaningful time in order to prevent the problems that Congress sought to eliminate by enacting the asset exemption statutes. For these reasons, the Arizona garnishment statutes discussed previously in this order violate Article 6, clause 2 (the Supremacy clause) of the United States Constitution.

## VI

## CONCLUSION

The Arizona post-judgment garnishment scheme, A.R.S. § 12–1571 *et seq* violates the Supremacy Clause of the United States Constitution as well as the due process clause of the 14th amendment as it fails to protect assets that have been declared exempt from debt collection activities.

Due to the substantial impact on debt collection activities in Arizona that this holding will have, this court will reiterate

that this holding is limited in application to the situation where the debtors assets are protected by some federal or state exemption statute. Nothing in this order should be considered as providing protection to non-exempt assets. The state statutory penalty imposed upon the non-prevailing party to the objection proceedings (A.R.S. § 12–1589(D)) should serve to dissuade those debtors seeking to expand this ruling beyond its stated limits.

IT IS ORDERED that plaintiffs' motion for partial summary judgment as to the constitutionality of the Arizona post-judgment garnishment procedures is granted in part and denied in part as set forth herein.

IT IS FURTHER ORDERED that defendant Century Finance Company's cross motion for summary judgment is denied.

IT IS FURTHER ORDERED that counsel for the plaintiffs submit an order for the court's consideration that is consistent with this opinion on or before April 30, 1985.