907 P.2d 1384

**FRAZER, RYAN, GOLDBERG, KEYT & LAWLESS, a partnership, Plaintiff/Judgment Creditor, Appellee,**

**Valley National Bank of Arizona, Garnishee, Appellee,**

v.

**Michael A. SMITH, a single man, Defendant/Judgment Debtor, Appellant.**

No. 1 CA–CV 93–0225.

Court of Appeals of Arizona, Division 1, Department A.

May 11, 1995.

Review Denied Dec. 19, 1995.

---

Paul Crane, Phoenix, for appellant.

Frazer, Ryan & Goldberg by John R. Fitzpatrick, Phoenix, for appellees.

## OPINION

FIDEL, Presiding Judge.

Only 25% of a judgment debtor's disposable earnings is subject to garnishment in Arizona. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") § 33–1131(B). In cases of extreme economic hardship, the court may reduce this non-exempt amount to 15%. *See* A.R.S. § 12–1598.10(F). Do funds retain their partially exempt status as earnings, however, once disbursed to the judgment debtor's bank account? That question is presented in this appeal.

## I. PROCEDURAL BACKGROUND

Michael A. Smith appeals from a garnishment judgment in favor of his creditor, Frazer, Ryan, Goldberg, Keyt & Lawless ("Frazer"), on a writ of garnishment against Valley National Bank ("VNB"). After recovering a $42,028.32 judgment against Smith for unpaid legal fees, Frazer served on Smith and VNB a non-earnings writ of garnishment identifying Smith's checking account at VNB.

VNB responded that Smith's account contained $3,500.07 and froze all but $150.00 pursuant to A.R.S. § 33–1126.[1] Smith requested a hearing, alleging that the writ had frozen exempt monies. The trial court honored Smith's personal exemption of $150.00 and found additional exemptions of $1,144.60, representing social security and medicare payments that Smith had received on behalf of his mother. But the trial court treated Smith's deposited wages as wholly susceptible to garnishment, ruling that they had

> not retain[ed] their identity as earnings once deposited. ARS § 12–1598.01(A) [sic] provides [that] "... earnings become monies as defined in Section 12–1570, paragraph six, upon their disbursement by the employer ..." These monies are subject to garnishment. ARS § 12–1570.01(A)2.

From that ruling, Smith appeals.

## II. EARNINGS AND MONIES

■ The undisputed facts raise pure questions of law concerning the scope of Arizona's statutory disposable earnings exemptions. Section 33–1131(A) defines "disposable earnings" as "that remaining portion of a debtor's ... compensation for his personal services ... after deducting from such earnings those amounts required by law to be withheld." Section 33–1131(B) restricts the percentage of disposable earnings subject to process, including garnishment, to "twenty-five per centum of disposable earnings for that week." Section 33–1131 has remained unchanged since it was adopted in 1976.

In 1985, the United States District Court for the District of Arizona found Arizona's then-existing post-judgment garnishment statutes, former A.R.S. §§ 12–1571 et seq., unconstitutional. *Neeley v. Century Fin. Co.*, 606 F.Supp. 1453, 1469–70 (D.Ariz.1985). In 1986, our legislature extensively amended A.R.S. §§ 12–1571 et seq. and added new §§ 12–1598 et seq., governing garnishment of earnings. Although section 28 of the 1986 Act amended portions of A.R.S. Title 33, the legislature did not change the provisions of § 33–1131 concerning the exemption of disposable earnings.

As amended in and after 1986, the Arizona statutes distinguish garnishment of earnings from garnishment of "monies which are not earnings." Title 12, chapter 9, article 4, provides for "Garnishment of Monies or Property." Article 4.1 separately provides for "Garnishment of Earnings." The definitional sections of Articles 4 and 4.1 highlight the distinctive treatment of "earnings" and "monies." The term "earnings" is defined in Article 4.1, § 12–1598(4), as "compensation paid or payable for personal services." The term "monies" is defined in Article 4, § 12–1570(6), to include "cash, credit and accounts," but the definition expressly excludes "earnings as defined in § 12–1598, paragraph 4."

The disparate treatment of "earnings" and "monies" is additionally marked in the sections that define the scope of Articles 4 and 4.1. In § 12–1570.01, the legislature describes Article 4 as extending to "[i]ndebtedness owed to a judgment debtor by a garnishee for monies which are not earnings as defined in § 12–1598, paragraph 4." And in Article 4.1, § 12–1598.01, the legislature not only reiterates the distinction, but addresses the transformation of "earnings" subject to Article 4.1 into "monies" subject to Article 4. Section 12–1598.01 provides in pertinent part:

> A. The provisions of this article are applicable to indebtedness owed to a judgment debtor by a garnishee for monies which are earnings as defined in § 12–1598, paragraph 4. *Earnings become monies,* as defined in § 12–1570, paragraph 6, *upon*

---

1. Section 33–1126(A)(8) lists among various categories of debtor's property exempt from execution, attachment, or sale "A total of one hundred fifty dollars held in a single [bank] account." A.R.S. § 33–1126(A)(8) (Supp.1994).

*their disbursement by the employer to or for the account of the employee,* except disbursements into a pension or retirement fund.

B. The provisions of this article are not applicable to garnishments of:

1. Indebtedness owed to a judgment debtor by a garnishee for amounts which are not earnings as defined in § 12–1598, paragraph 4.

2. Monies held by a garnishee on behalf of a judgment debtor.

(Emphasis added.)

The trial court based its ruling straightforwardly on the language of § 12–1598.01(A). Although § 33–1131(B) exempts 75% of "disposable earnings" from garnishment, funds are transformed from "earnings" into "monies" once disbursed into an employee's account. Because the funds in Smith's bank account were therefore "monies," not "earnings," the trial court found them beyond the protective reach of § 33–1131(B).

Smith attacks the trial court's ruling by pointing out that § 12–1570.01 does not bring all of a judgment debtor's "monies" within the reach of his creditors. Sections 12–1570(2) and (7) contemplate the existence of both "exempt" and "nonexempt" monies, only the latter of which are subject to garnishment.[2] Smith asserts that we should attribute to the legislature an intent to categorize as exempt those monies which had taken on the character of exempt disposable earnings under A.R.S. § 33–1131. Citing *Vukovich v. Ossic,* 50 Ariz. 194, 70 P.2d 324 (1937), and *Midamerica Savings Bank v. Miehe,* 438 N.W.2d 837 (Iowa 1989), Smith urges that if "disposable earnings," which are exempt from garnishment in the hands of the employer, lose their exempt character merely through disbursement, the earnings exemption is reduced to an illusion.

*Vukovich* concerned a provision in the Revised Code of 1928 that provided that worker's compensation benefits, which are unassignable in the hands of the Industrial Commission, "shall be exempt from attachment,

garnishment and execution, and shall not pass to another person by operation of law." 50 Ariz. at 197, 70 P.2d at 325. Our supreme court held:

By the broad statement that compensation is exempt, without any limitation as to time, the Legislature evidently intended that the exemption should continue so long as compensation may be properly regarded as such, and it does not lose its character as compensation merely because it is paid to an employee and deposited in the bank but retains this status so long as it is kept intact and unmixed with his other funds.

*Id.* at 198, 70 P.2d at 325–26.

In *Midamerica Savings Bank,* the Iowa Supreme Court similarly applied a statutory earnings exemption to earnings that had been disbursed to the debtor's bank account. Reversing a judgment for the judgment creditor, the court stated,

If wages intended by law to be exempt from creditors' claims are only accorded that status in the hands of the debtor's employer, the protection can be rendered meaningless by creditors levying on the funds in the hands of the debtor or on the debtor's bank account.

438 N.W.2d at 839.

*Vukovich* and *Midamerica* expose the insubstantiality of an earnings exemption that endures only while the earnings remain in the hands of the employer and dissolves once they are disbursed to the employee. Yet we are faced with a different statute than the one our supreme court interpreted in *Vukovich.* And we find ourselves foreclosed by clear statutory language from following either *Vukovich* or *Midamerica.*

■ First, the earnings exemption applies only to earnings, and as we have noted, A.R.S. § 12–1598.01(A) expressly defines the transition of earnings into monies upon disbursement to the employee. Even though the 75% earnings exemption is found at § 33–1131(B), within a different title of the

---

2. Section 12–1570(2) defines "Exempt monies or property" as "monies or property that, pursuant to a state or federal law, is not subject to judicial process, including ... garnishment." Section 12–1570(7) defines "Nonexempt monies or property" as those "which are not restricted by law from judicial process."

statutes, § 33–1131 is closely intertwined with A.R.S. §§ 12–1598 et seq., and must be given a consistent interpretation. *See, e.g., In re Appeal in Maricopa County, Juvenile Action No. JD–6236*, 178 Ariz. 449, 452 n. 2, 874 P.2d 1006, 1009 n. 2 (App.1994). The intertwining of §§ 33–1131 and 12–1598 et seq. is particularly apparent in A.R.S. § 12–1598.10(F):

> If at the [garnishment] hearing the court determines that the judgment debtor is subject to the twenty-five per cent maximum disposable earnings provision under § 33–1131, subsection B and based on clear and convincing evidence that the judgment debtor or his family would suffer extreme economic hardship as a result of the garnishment, the court may reduce the amount of nonexempt earnings withheld under a continuing lien ordered pursuant to this section from the twenty-five per cent to not less than fifteen per cent.

The statutes are explicitly cross-referenced. The 25% of earnings that are nonexempt under § 33–1131 may be reduced to 15% under § 12–1598.10(F). To operate in tandem as they do, these statutes must necessarily define "earnings" the same way.

■ Second, although Smith argues that "the distinction between 'earnings' and 'money' is simply irrelevant" to the garnishment of money under A.R.S. §§ 12–1570 et seq., this argument is simply wrong. The legislature carefully distinguished "earnings" from "monies" within Article 4 as well as Article 4.1. *See* A.R.S. § 12–1570(6). And the legislature described Article 4 as extending to "monies which are not earnings." *See* A.R.S. § 12–1570.01.

■ Third, although A.R.S. § 12–1570 contemplates a category of "exempt monies," the statutory framework does not support Smith's contention that exempt earnings turn into exempt monies upon disbursement to the employee. The legislature has designated various types of exempt monies in A.R.S. § 33–1126.[3] Nowhere, however, does the legislature suggest that exempt monies include those that were formerly exempt earnings under §§ 33–1131 or 12–1598.10(F).

■ Fourth, A.R.S. § 33–1131 was modelled—both in its definition of "disposable earnings" and in its partial exemption of disposable earnings from garnishment—after the federal Consumer Credit Protection Act.[4] *Compare* 15 U.S.C. §§ 1672–1673 *with* A.R.S. § 33–1131. The courts that have considered whether the federal garnishment exemption extends to earnings disbursed to the judgment debtor's bank account have uniformly held that it does not.[5]

Smith discounts federal precedent by arguing that Arizona's exemption scheme is more debtor-protective than the federal model. Section 33–1131(B) exempts "disposable earnings" not just from "garnishment" (15 U.S.C. § 1673) but from "process," defined to include every form of judicial process for debt collection. A.R.S. § 33–1121(2). But this distinction does not help Smith's case. The Arizona legislature placed § 33–1131 among other personal property exemptions in a single article. That comprehensive article covers many forms of tangible personal

---

**3.** For example, § 33–1126(A), entitled "Money benefits or proceeds; exceptions," lists as exempt property:

> 1. All money received by or payable to a surviving spouse or child upon the life of a deceased spouse, parent or legal guardian, not exceeding twenty thousand dollars.
>
> \* \* \* \* \* \*
>
> 3. All monies received by or payable to a person entitled to receive child support or spousal maintenance pursuant to a court order.
> 4. All money, proceeds or benefits of any kind to be paid … under any policy of health, accident or disability insurance or any similar plan or program of benefits. …

> 5. All money arising from any claim for the destruction of, or damage to, exempt property. …

**4.** Similarly, A.R.S. § 12–1598(4) plainly adopted the definition of "earnings" contained in 15 U.S.C. § 1672(a).

**5.** *Usery v. First Nat'l Bank*, 586 F.2d 107, 110 (9th Cir.1978); *Dunlop v. First Nat'l Bank*, 399 F.Supp. 855, 857 (D.Ariz.1975); *Edwards v. Henry*, 97 Mich.App. 173, 293 N.W.2d 756, 757–58 (1980); *John O. Melby & Co. Bank v. Anderson*, 88 Wis.2d 252, 276 N.W.2d 274, 276–77 (1979); cf. *Citronelle–Mobile Gathering, Inc. v. Watkins*, 934 F.2d 1180, 1191 (11th Cir.1991); *In re Orndoff*, 100 B.R. 516, 519 (Bankr.E.D.Cal.1989).

property, not just "disposable earnings," and it employs the generic term "process" to exempt the various forms of covered property from all forms of judicial collection remedies, not just garnishment alone. But the legislature confined the scope of § 33–1131 to "disposable earnings," a term of art that federal authorities had interpreted to exclude already-paid compensation. And there is nothing within the wording of § 33–1131 that suggests our legislature meant to give disposable earnings a broader or more enduring protection than was given under federal law.

■ Finally, until 1986 the Arizona statutes did contain a limited exemption for already-paid wages. *See* A.R.S. § 12–1594 (repealed 1986).[6] But the legislature repealed this exemption and provided no replacement when it revised the Arizona post-judgment garnishment scheme. 1986 Ariz.Sess.Laws ch. 4, § 23. The repeal of § 12–1594 sharply suggests that the legislature chose not to permit any such exemption to survive.

In summary, the earnings protection of §§ 33–1131 and 12–1598.10 does not extend to monies disbursed to the debtor's bank account. We acknowledge that the earnings exemption is thus diluted, at least for debtors who deposit their earnings in bank accounts. But as we have said on other occasions, "An upholding is not an endorsement." *McPeak v. Industrial Comm'n*, 154 Ariz. 232, 235, 741

P.2d 699, 702 (App.1987). Those who believe that the earnings exemption should endure beyond disbursement to the employee must direct their remedial efforts to the legislature, not the courts. The trial court correctly granted Frazer judgment on its writ of garnishment.

## III. ATTORNEY'S FEES

■ Frazer seeks attorney's fees pursuant to A.R.S. § 12–1591(C). "Costs" within this statute includes reasonable attorney's fees. *Business Fin. Servs., Inc. v. AGN Dev. Corp.*, 143 Ariz. 603, 609, 694 P.2d 1217, 1223 (App.1984). But A.R.S. § 12–1591(C) does not extend the right to reasonable compensation to a successful garnishment plaintiff. *Spanier v. United States Fidelity & Guar. Co.*, 127 Ariz. 589, 598–99, 623 P.2d 19, 28–29 (App.1980). We therefore deny Frazer's request for attorney's fees on appeal.

WEISBERG and GARBARINO, JJ., concur.

---

6. Former § 12–1594 provided in pertinent part:
   A. One half of the earnings for personal services rendered at any time within thirty days preceding service of the writ shall not be subject to garnishment when such earnings are necessary for the support of the family of the debtor, supported wholly or in part by his labor.