**In re Frank P. PALIDORA and Sondra Lynn Palidora, Debtors.**

**No. 2–03–15494–PHX–RJH.**

United States Bankruptcy Court, D. Arizona.

May 24, 2004.

Amended June 7, 2004.

any event are exempt, even after receipt and deposit.

When Frank and Sondra Palidora ("Debtors") filed their chapter 7[1] petition they had $2,194.80 in their bank accounts. The Chapter 7 Trustee ("Trustee") moved for turnover of these funds less the $300 exemption provided by Arizona law for funds in a joint debtors' bank account.[2] Debtors objected to the Trustee's motion by asserting that all of the monies in the bank account had derived either from Frank's wages or from a $1,000 check for child support that was paid to Sondra and deposited into her account.

Nick Rayes, Phoenix, AZ, for Debtors.

Dawn M. Bayne, Allen & Sala PLC, Phoenix, AZ, for trustee Constantino Flores.

## AMENDED OPINION

RANDOLPH J. HAINES, Bankruptcy Judge.

The Court must here determine whether the cash derived from wages paid prepetition retains the status of a wage exemption, and whether cash derived from child support paid to the debtor prepetition is property of the estate. The Court concludes that the Arizona exemption for wages does not apply once they are paid, but that Arizona statutes and case law deem child support payments to be for the benefit of the child and therefore not property of the parent debtor's estate, and in

### Arizona's Wage Exemption Does Not Apply to Paid Wages

■ Arizona law exempts 75% of a debtor's disposable earnings.[3] "Disposable earnings" are defined by A.R.S. § 33–1131(A) to be "that remaining portion of a debtor's wages, salary or compensation for his personal services, including bonuses and commissions," after deducting state and federal withholdings.

■ The question, therefore, is whether "wages, salary or compensation for personal services" means only what is payable, or includes what has been paid, either by cash, check or direct deposit to a debtor's bank account. The meaning of a state exemption is controlled by the applicable state law, and a bankruptcy court is bound by the state's construction of a state stat-

1. Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. Arizona Revised Statutes ("A.R.S.") § 33–1133(B) opts out of the federal exemptions provided in 11 U.S.C. § 522(d). A.R.S. § 33–1126(A)(8) provides an exemption for a "total of one hundred fifty dollars held in a single account in any one financial institution...." A.R.S. § 33–1121.01 provides that in the case of married persons, each spouse is entitled to the personal property exemptions, effectively

doubling the personal property exemptions in joint cases.

3. "[T]he maximum part of the disposable earnings of a debtor for any workweek which is subject to process may not exceed twenty-five per cent of disposable earnings for that week or the amount by which disposable earnings for that week exceed thirty times the minimum hourly wage prescribed by federal law in effect at the time the earnings are payable, whichever is less." A.R.S. § 33–1131(B).

ute.[4] Applying the laws of other states, some bankruptcy courts have concluded that exempt wages retain their exempt status once paid and deposited in a debtor's bank account.[5]

The Arizona Court of Appeals, however, has held that "the earnings protection of [A.R.S.] §§ 33–1131 and 12–1598.10 does not extend to monies disbursed to the debtor's bank account." *Frazer, Ryan, Goldberg Keyt & Lawless v. Smith,* 184 Ariz. 181, 186, 907 P.2d 1384, 1389 (App. Div. 1 1995). It did so for a number of cogent reasons. Most importantly, it relied on the statute governing garnishment procedures,[6] which expressly provides that "Earnings become monies, as defined in § 12–1570, paragraph 6, upon their disbursement by the employer to or for the account of the employee, except disbursements into a pension or retirement fund."

A.R.S. § 12–1598.01(A). This necessarily means that "earnings" are only earnings until they are paid, and thereafter they are no longer earnings but are "monies." Although that definition is found in a different title of the Arizona statutes than the exemption provisions, the Court of Appeals concluded the statutes are "closely intertwined" and "must be given a consistent interpretation." *Smith,* 184 Ariz. at 185, 907 P.2d at 1387–88. Indeed, a later provision of the garnishment procedure statute relating to the continuing garnishment lien on earnings expressly cross references the exemption provision. A.R.S. § 12–1598.10(F). The *Smith* opinion also noted that Arizona has other exemptions for monies in A.R.S. § 33–1126, but nowhere do the statutes "suggest that exempt monies include those that were formerly exempt earnings."[7] *Id.* Finally, the Court of Ap-

---

**4.** *In re Goldman,* 70 F.3d 1028, 1029 (9th Cir.1995).

**5.** *E.g., In re Norris,* 203 B.R. 463, 465 (Bankr. D.Nev.1996)("The debtor's earnings represented by the direct deposit to his checking account are readily traceable and retain their exempt status" under Nevada law, based on a liberal construction of the exemption law and to effectuate its purpose); *In re Bresnahan,* 183 B.R. 506 (Bankr.S.D.Ohio 1995)(Ohio's exemption of a debtor's "right to receive a payment under any pension" plan also applies to the payment when received and deposited in a bank account), citing *Daugherty v. Cent. Trust Co.,* 28 Ohio St.3d 441, 504 N.E.2d 1100, 1103 (1986)(Ohio's exemption for personal earnings applies to funds received as earnings and deposited in debtor's bank account); *In re Thompson,* 1993 WL 767973 (Bankr.N.D.Iowa 1993)(tax refund that is exempt under Iowa law retains it exempt status when received and deposited in a bank account), citing *MidAmerica Sav. Bank v. Miehe,* 438 N.W.2d 837 (Iowa 1989)(personal earnings do not lose their exempt status upon being deposited in a bank account).

**6.** The *Smith* opinion noted that Arizona's postjudgment garnishment procedures had been held unconstitutional in *Neeley v. Century Fin. Co.,* 606 F.Supp. 1453, 1469–70

(D.Ariz.1985), and that the legislature extensively amended those procedures the following year and added new provisions governing the garnishment of earnings, A.R.S. §§ 12–1598 *et seq. Smith,* 184 Ariz. at 183, 907 P.2d at 1386.

**7.** Although the *Smith* opinion did not note it, these provisions also distinguish "monies received by or payable to" a debtor from money "to be paid" a debtor. For example, A.R.S. § 33–1126(A)(3) exempts "All monies received by or payable to a person entitled to receive child support or spousal maintenance pursuant to a court order," whereas A.R.S. § 33–1126(A)(4) exempts only "money, proceeds or benefits of any kind to be paid" under an employer's health, accident or disability insurance. And there is a distinct $150 exemption for money held in a single bank account. A.R.S. § 11–1126(A)(8). These distinctions also indicate that the Arizona legislature did not regard "earnings" as any form of money but rather as the compensation to be paid. They also suggest that the legislature did not intend the exemptions to continue to apply when the asset changes character unless the statutory language expressly so provided. Such an express provision was made for the homestead exemption, A.R.S. § 33–1101(C), which continues to ap-

peals noted that Arizona's statute partially exempting disposable earnings was modeled after the federal Consumer Credit Protection Act, 15 U.S.C. §§ 1672–73, and that courts construing the federal garnishment exemption uniformly hold that it does not extend to earnings disbursed to a debtor's bank account. *Id.*, citing, *e.g.*, *Usery v. First Nat'l Bank*, 586 F.2d 107, 110 (9th Cir.1978).

Because an Arizona court's construction of the Arizona exemption laws is binding on this Court, we must conclude that the Arizona wage exemption ceases to apply upon the debtor's receipt of those wages, whether paid in cash, by check, or by direct deposit in the debtor's bank account. In short, the wage exemption statute only limits what a creditor could obtain by garnishment of the employer, not what could be attached in the hands of the debtor.

### Child Support Payments are Trust Funds

■ But for different reasons, paid child support is different from paid wages. In a case under the Bankruptcy Act,[8] the Ninth Circuit held that where state law provides that child support payments are held by the custodial parent in a fiduciary capacity, such funds do not become property of the estate. *Boston v. Gardner (In re Gardner)*, 365 F.2d 242 (9th Cir.1966) (applying Oregon law). In that case, the debtor's ex-husband had fallen behind in making child support payments. When he made the payments postpetition, the trustee sought to claim them on behalf of the estate because the debtor had a right to reimburse herself from those funds for the expenses she incurred in supporting the child while the payments were not being made. The Ninth Circuit held that the funds at issue "have their origin as trust assets for the child's support" and that because of that "origin and the mother's own support obligation, in our judgment her right of reimbursement cannot prevail over the child's claims." *Id.* at 243. Consequently the Ninth Circuit concluded the trustee had no claim to such funds unless it could clearly be shown that they were not necessary to satisfy the debtor's obligations to the minor child, "either present or during the future period of his minority." *Id.*

Because Bankruptcy Code § 541(d) defines property held in trust not to constitute property of the estate, the holding of *Boston v. Gardner* should still be good law under the Code, at least with respect to states that define child support payments to be trust funds or funds held in a fiduciary capacity. At least one bankruptcy court within the Ninth Circuit has reached such a conclusion, applying Nevada law, as have courts in other circuits.[9]

■ Although there does not appear to be an Arizona statute or judicial decision

---

ply for eighteen months to the "identifiable cash proceeds" from the sale of a homestead.

8. The Bankruptcy Act of 1898, which was replaced by the enactment of the current Bankruptcy Code in 1978.

9. *In re Anders*, 151 B.R. 543, 546 (Bankr. D.Nev.1993)("The emerging view in a number of jurisdictions is that child support is a property interest belonging to the child."). *See e.g., In re Poffenbarger*, 281 B.R. 379, 387–88 (Bankr.S.D.Ala.2002)(under Alabama law, "child support payments belong to the minor child" and "the role of the custodial parent receiving and handling child support payments is more akin to that of a trustee or fiduciary with regard to such funds"); *Zimmerman v. Starnes*, 35 B.R. 1018, 1020–22 (D.Colo.1984)(applying California and Colorado law); *In re Welch*, 31 B.R. 537, 540 (Bankr.D.Kan.1983)(applying Kansas law). *But see In re Harbour*, 227 B.R. 131, 132 (Bankr.S.D.Ohio 1998)(under Ohio law, child support arrearages are property of the custodial parent's bankruptcy estate); *In re Henady*, 165 B.R. 887, 893 (Bankr.N.D.Ind.1994)(applying Indiana law).

expressly declaring child support payments to be trust funds, they do imply as much. "[E]very person has the duty to provide all reasonable support for that person's natural and adopted minor, unemancipated children, regardless of the presence or residence of the child in this state." A.R.S. § 25–501(A). "The obligation to pay child support is primary and other financial obligations are secondary." A.R.S. § 25–501(C). "All duties of support as prescribed in this chapter may be enforced by all civil and criminal remedies provided by law." A.R.S. § 25–501(d). *Little v. Little*, 193 Ariz. 518, 522, 975 P.2d 108, 112 (1999)(Arizona law prescribes that "[t]he obligation to pay child support is primary and other financial obligations are secondary."); *Jorgensen v. Jorgensen*, 131 Ariz. 271, 273, 640 P.2d 202, 204 (App. Div. 2 1981) ("A parent obligated to pay child support may not avoid that obligation by voluntarily incurring debts that reduce the ability to pay, since the ability to pay such support must be determined by viewing the child support obligation as a primary obligation superior to all other financial obligations." (Citations omitted)); *Beck v. Jaeger*, 124 Ariz. 316, 317, 604 P.2d 18, 19 (App. Div. 2 1979)("Other financial obligations are secondary...."). Arizona courts have held that former spouses may not "bargain away custody and child support provisions of a divorce decree in exchange for interests in real property which serve only to enhance the financial interests of the parties themselves and completely disregard the welfare of the children." *Evans v. Evans*, 17 Ariz.App. 323, 325–26, 497 P.2d 830, 832–33 (Div. 2 1972). "A parent may not form a valid and enforceable contract which releases the parent from all obligation to support his or her minor children." *Smith v. Saxon*, 186 Ariz. 70, 73, 918 P.2d 1088, 1091 (App. Div.

1 1996). From these authorities this Court concludes that an Arizona court would find that money paid by a former spouse to a custodial parent for child support pursuant to a court order are trust funds held by the custodial parent for the benefit of the child. Under Bankruptcy Code § 541 and *Boston v. Gardner,* such funds are not property of the estate.

Moreover, even if the funds paid as child support are not trust funds, they are exempt under Arizona law. A.R.S. § 33–1126(A)(3) exempts "All monies received by or payable to a person entitled to receive child support or spousal maintenance pursuant to a court order." Unlike the wage exemption statute, this exemption provision expressly includes not only such money payable to a debtor, but also such money received by a debtor. Consequently the exemption would continue in the funds when deposited in a bank account, provided they are traceable to the exempt source.

There is an important proviso to these conclusions, however. The exemption statute makes clear that the child support payments must have been made pursuant to a court order. And the trust fund analysis does not apply to parents who are still married to each other. "A.R.S. § 12–2451 [currently § 25–501] imposes a general duty on parents to support their children, but there is no duty on one parent to pay a certain sum *to the other parent* for child support." *Lamb v. Superior Court,* 127 Ariz. 400, 402, 621 P.2d 906, 908 n. 1 (1980)(emphasis added). On this record, it is not possible to determine whether the alleged $1000 check to Sondra for child support was paid by the debtor husband Frank or was paid by a former husband pursuant to a valid court order for child support. The former would

be nonexempt property of the estate,[10] while the latter would be both exempt and not property of the estate.

## Conclusion

For the foregoing reasons, the Trustee's objection to the Debtors' claim of exemption of the bank account based on the wage exemption is sustained. The Court is not in a position to rule on the claim of exemption for child support payments pending further factual development. Unless the parties resolve the issue among themselves, the Trustee's objection to the claimed child support exemption is set for status hearing on June 7, 2004 at 10:00 a.m. in Courtroom # 3, 2929 North Central Avenue, Phoenix, Arizona.

---

**10.** The Court does not here address the status of money paid by one spouse to the other as child support pursuant to an interim child support order entered in a pending divorce action but prior to entry of the final divorce decree. Such a payment might constitute an exception to the statement quoted from *Lamb* and might qualify as exempt under A.R.S. § 33–1126(A)(3), but the Court does not decide those questions here. This footnote is the only amendment made to the opinion originally issued on May 24, 2004.