******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

THE CADLE COMPANY *v.* MARGUERITE
FLETCHER ET AL.
(SC 19583)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Robinson, Js.*

*Argued October 12—officially released December 23, 2016***

*Paul N. Gilmore*, for the appellant (plaintiff).

*Nicholas J. Harding*, with whom was *Agnes Roman-owska*, for the appellees (defendants).

*Opinion*

ZARELLA, J. This case, which comes to us on certification from the United States Court of Appeals for the Second Circuit pursuant to General Statutes § 51-199b, requires us to determine whether, and under what circumstances, residual postgarnishment wages (residual wages) are subject to postjudgment execution by a judgment creditor. The plaintiff, The Cadle Company, is the defendant Terry B. Fletcher's judgment creditor pursuant to two state court judgments, under which Fletcher (Terry) owed the plaintiff more than $3 million. To satisfy these judgments, the plaintiff garnished Terry's wages. Since at least 2005, Terry has transferred to the bank account of his wife, the named defendant, Marguerite Fletcher (Marguerite), more than $300,000 of his residual wages. The plaintiff brought an action against the defendants in the United States District Court for the District of Connecticut, claiming, among other things, that Terry's transfer of his residual wages to his wife violated the Connecticut Uniform Fraudulent Transfer Act (CUFTA), General Statutes § 52-552 et seq. The plaintiff claimed that, as a result of the fraudulent transfer of Terry's residual wages to Marguerite, she was personally liable to the plaintiff for the full amount of the funds that were transferred within the four years preceding the commencement of the action. The defendants filed a motion for partial summary judgment, claiming that, under Connecticut law, after a judgment debtor's wages have been garnished, the remaining wages are exempt from execution, and, therefore, the transfer of those wages to a third party cannot constitute a fraudulent transfer. The plaintiff also filed a motion for partial summary judgment, contending that there was no genuine issue of material fact with respect to Terry's transfer of his residual wages to Marguerite. The District Court denied the defendants' motion for partial summary judgment, granted the plaintiff's motion for partial summary judgment and, after conducting various proceedings related to the plaintiff's other claims, ultimately rendered judgment for the plaintiff in the amount of $401,426.16 on its CUFTA claim. The defendants appealed from the District Court's judgment to the Second Circuit Court of Appeals. Thereafter, the Second Circuit certified the following question to this court pursuant to § 51-199b: "Do [General Statutes] §§ 52-361a and 52-367b, read together, exempt [postgarnishment] residual wages held in a third party's bank account from further execution, so that they become freely transferable under [CUFTA] . . . ?" (Citation omitted.) *Cadle Co.* v. *Fletcher*, 804 F.3d 198, 202 (2d Cir. 2015). This court accepted the certified question. We conclude that Terry's residual wages would not have been exempt from execution if he had retained possession of them and, therefore, that they were subject to execution after Terry transferred them to Marguerite's account.

Accordingly, we answer the certified question in the negative.

The certified question requires us to interpret the governing statutory scheme, and our review is therefore plenary. See, e.g., *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 213, 38 A.3d 1183, cert denied,      U.S.     , 133 S. Ct. 425, 184 L. Ed. 2d 255 (2012). "The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 213–14.

We begin our analysis with the language of the relevant statutes. Section 52-367b (a) provides in relevant part: "Execution may be granted pursuant to this section against any debts due from any financial institution to a judgment debtor who is a natural person, except to the extent such debts are protected from execution by . . . section 52-361a . . . ." Section 52-361a (a) provides in relevant part: "If a judgment debtor fails to comply with an installment payment order, the judgment creditor may apply to the court for a wage execution. . . ." Section 52-361a (f) provides in relevant part: "The maximum part of the aggregate weekly earnings of an individual which may be subject under this section to levy or other withholding for payment of a judgment is the lesser of (1) twenty-five per cent of his disposable earnings for that week, or (2) the amount by which his disposable earnings for that week exceed forty times the higher of (A) the minimum hourly wage prescribed by Section 6 (a) (1) of the Fair Labor Standards Act of 1938, USC Title 29, Section 206 (a) (1), or (B) the full minimum fair wage established by subsection (i) of section 31-58, in effect at the time the earnings are payable. . . ."

With this statutory background in mind, it is necessary to clarify the claims that the parties are making

before addressing the certified question. As it did before the District Court, the plaintiff makes the following alternative claims before this court: (1) § 52-367b does not apply in this case because Terry never deposited his residual wages into his own bank account; and (2) even if he had deposited his residual wages into his own bank account, § 52-367b would not have exempted them from execution. The District Court agreed with the plaintiff's first claim, holding that, "even if there were some protection for 'net residual wages,' once [Terry] transfers those wages to [Marguerite's] account, he can no longer seek protection from execution under the statute."[1] If the defendants' position that none of Terry's residual wages would have been subject to execution by the plaintiff if they had been in his possession is correct, however, then, even if § 52-367b did not provide any protection of the funds that had been deposited in Marguerite's account, Terry's transfer of his residual wages to Marguerite could not have been made with the intent to deprive the plaintiff of any right to execute against the funds, and the plaintiff would have had no claim to them under CUFTA. See General Statutes § 52-552e (a) (1) (transfer by debtor is fraudulent when it is made "[w]ith actual intent to hinder, delay or defraud any creditor"). It is clear, therefore, that the plaintiff's claims are not truly claims in the alternative. Rather, the question of whether Terry's residual wages would have been subject to execution by the plaintiff if he had deposited them in his own bank account or otherwise retained possession of them is dispositive. If the answer to that question is "yes," then the residual wages that were transferred to Marguerite's bank account are subject to execution pursuant to CUFTA. If the answer is "no," then the plaintiff would have no claim to the funds in Marguerite's bank account.

Accordingly, we address the defendants' claim that Terry's residual wages would have been exempt from execution if he had deposited them in his own bank account or otherwise kept possession of them. In support of this claim, the defendants first cite the language of § 52-367b (a) providing that "[e]xecution may be granted pursuant to this section against any debts due from any financial institution to a judgment debtor who is a natural person, except to the extent such debts are protected from execution by . . . section 52-361a," which governs the garnishment of wages. As we have indicated, § 52-361a (f) provides the formula by which the maximum amount of a debtor's wages that may be garnished is to be determined and further provides that "[o]nly one execution under this section shall be satisfied at one time." The defendants contend that the reference to § 52-361a in § 52-367b (a) must mean that, when a judgment debtor has deposited his wages into a bank account, a judgment creditor is entitled to execute against those funds only to the extent that the creditor would have been entitled to garnish the debtor's earn-

ings. The defendants further argue that, if the earnings were subject to garnishment before being deposited, as they were in the present case, the judgment creditor is not entitled to execute against any portion of the deposited funds.

We are not persuaded. Section 52-361a (f) places limits on only the amount of "earnings" that are subject to execution. General Statutes § 52-350a (5) defines "earnings" as "any debt accruing by reason of personal services, including any compensation payable by an employer to an employee for such personal services, whether denominated as wages, salary, commission, bonus or otherwise." Because wages that a judgment debtor has deposited into a bank account do not constitute a debt payable by the employer, they do not come within this definition, and § 52-361a does not apply to them. Thus, the most reasonable reading of the language of § 52-367b (a) providing that that debts due from any financial institution are subject to execution "except to the extent such debts are protected from execution by . . . section 52-361a" is that the debts due by a financial institution are subject to execution *unless* the debt is an employee's "earnings," which are subject to § 52-361a. Accordingly, we agree with the District Court's conclusion that this language refers to the earnings of bank employees, and it was intended to prevent judgment creditor banks from using § 52-367b (a) to execute against such earnings instead of proceeding pursuant to § 52-361a.[2]

We recognize that two trial courts have concluded to the contrary. See *Community Investment Corp.* v. *Sirico Professional Services*, Superior Court, judicial district of New Haven, Docket No. NNH-CV-14-6051279-S (July 16, 2015) (60 Conn. L. Rptr. 606); *Discover Bank* v. *Marchetti*, Superior Court, judicial district of New Britain, Docket No. HHB-CV-11-6010114-S (June 21, 2012) (54 Conn. L. Rptr. 235). However, both of these courts reasoned that, if the reference to § 52-361a in § 52-367b (a) did not operate to exempt wages deposited in a bank account from execution, it would be meaningless. *Community Investment Corp.* v. *Sirico Professional Services*, supra, 608; *Discover Bank* v. *Marchetti*, supra, 236. As we have explained, that is not the case. Accordingly, we do not find these cases persuasive.

The defendants also note that, pursuant to § 52-367b (k), the judges of the Superior Court have adopted an exemption form for financial institution executions that lists § 52-361a as an exemption. See Exemption Claim Form, Financial Institution Execution, Form JD-CV-24A (Revised February, 2015). Although we agree with the defendants that the current form does, in fact, indicate that wages are exempt from execution pursuant to § 52-367b (a), we are compelled to conclude that the form is in error. Before 2006, the judicially created exemption

form contained no reference to § 52-361a, even though the reference to the wage garnishment statute had been included in § 52-367b (a) since its enactment in 1981. See Public Acts 1981, No. 81-352, § 2 (P.A. 81-352).[3] The change to the form was instigated by a lawyer employed by the Legal Assistance Resource Center of Connecticut, Inc., who requested in a November 30, 2001 letter to the External Affairs Division of the Judicial Branch that the form be revised to, among other things, include the reference to § 52-361a. Thereafter, a committee was convened by the Law Revision Commission, which, in consultation with representatives of the Court Operations Division of the Judicial Branch (Court Operations) and legal service providers, recommended that certain changes to the form be made, including adding the reference to § 52-361a. In a May 5, 2006 letter from Court Operations to the Chief Court Administrator, Court Operations represented that the "primary intent of the changes to the form [was] to clarify the form and make it easier to use." The letter did not explain the changes, which were shown partially in handwriting and partially in typed inserts in an attached draft form, and gave no indication that the form had been substantively and significantly changed to include an exemption that it previously had not included. Notably, the new reference to § 52-361a was included in a typed insert that also contained handwritten changes, thereby giving the appearance that the only changes were the handwritten ones. Thereafter, the Chief Court Administrator approved the revisions, and the form was printed and distributed. Accordingly, it appears that the inclusion of the exemption for wages in the Exemption Claim Form was simply the result of an oversight.

In support of their claim that wages in the hands of the judgment debtor are exempt from execution to the same extent that earnings are exempt under § 52-361a, the defendants also rely on the language of General Statutes § 52-352b (n), which exempts from any form of postjudgment process "[a]limony and support, other than child support, but only to the extent that wages are exempt from execution under section 52-361a . . . ." The defendants contend that this provision demonstrates that the legislature intended that residual wages would be exempt from any form of execution, including bank executions pursuant to § 52-367b and property executions pursuant to General Statutes § 52-356a. Again, we are not persuaded. If the legislature had intended to exempt residual wages that are in the hands of a judgment debtor from any form of execution, the legislature easily could have provided so expressly, as it did for "wages earned by a public assistance recipient under an incentive earnings or similar program . . . ." General Statutes § 52-352b (d). We conclude, therefore, that § 52-352b (n) merely provides that alimony and support are exempt from property executions and bank executions to the same extent that earnings

are exempt from wage garnishments.

The defendants' reliance on General Statutes § 52-350f and § 52-356a is similarly unavailing. Section 52-350f, which is the general provision authorizing the enforcement of a money judgment, provides in relevant part that "[a] money judgment may be enforced against any property of the judgment debtor unless the property is exempt from application to the satisfaction of the judgment under section . . . 52-361a . . . ." Thus, that statute merely acknowledges that some earnings are exempt from wage garnishments under § 52-361a. The statute is silent as to wages that are in the hands of a judgment debtor, which, as we have explained, are not "earnings" within the statutory definition. Section 52-356a (a) (1), which sets forth the procedure for executing against personal property, provides in relevant part that "the clerk of the court in which the money judgment was rendered shall issue an execution pursuant to this section against the nonexempt personal property of the judgment debtor other than debts due from a banking institution or earnings. . . ." Thus, that statute merely acknowledges that the procedures for executing against personal property do not apply to earnings. Rather, the procedure for garnishing earnings is set forth in § 52-361a. Like § 52-350f, § 52-356a is silent as to wages in the hands of a judgment debtor.

The defendants further claim that their position is supported by the legislature's 2014 amendment to § 52-367b (c), which provided in relevant part that, "if electronic direct deposits that are readily identifiable as . . . (2) wages were made to the judgment debtor's account during the thirty-day period preceding the date that the execution was served on the financial institution, then the financial institution shall leave the lesser of the account balance or one thousand dollars in the judgment debtor's account . . . ." Public Acts 2014, No. 14-9, § 1 (P.A. 14-9), codified as amended at General Statutes (Rev. to 2015) § 52-367b (c). The defendants contend that this 2014 amendment "demonstrated the legislature's belief that a judgment debtor's wages can be subject to a preexisting exemption under Connecticut law." Although we recognize that the legislative history of P A. 14-9, § 1, provides some support for the proposition that some legislators may have believed that such an exemption existed,[4] the language of the amendment itself does not presuppose the existence of such an exemption, and, as we have explained, neither § 52-367b nor any of the related postjudgment execution statutes creates such an exemption. Accordingly, we reject this claim.

We also are not persuaded by the defendants' contention that the conclusion that wages in the hands of a judgment debtor are subject to execution violates the public policy underlying the limitation on wage garnishments set forth in § 52-361a. In support of this con-

tention, the defendants cite to *General Tires, Inc.* v. *United Aircraft Corp.*, 143 Conn. 191, 120 A.2d 426 (1956). In that case, the plaintiff, a judgment creditor, served a wage execution on the defendant, the judgment debtor's employer, directing it to withhold all wages in excess of $25, the maximum amount that could be withheld under the relevant statute. Id., 192; see id., 194. The defendant refused to comply on the ground that it was already withholding $10 per week pursuant to another wage execution, and the wage execution statute provided that only one wage execution could be satisfied at one time. Id., 192–94. The trial court concluded that the existence of the prior execution did not warrant the defendant's refusal to withhold wages pursuant to a second wage execution because "the statute as a whole contemplated that all wages of a judgment debtor in excess of the $25 weekly exemption should be held to satisfy executions . . . ." Id., 195. This court disagreed, concluding that the provision allowing only one execution to be satisfied at one time was unequivocal. Id. This court noted that the trial court was authorized to modify a wage execution to permit the judgment debtor to receive a portion of the wages in excess of $25 per week and that the purpose of this provision was to allow the judgment debtor to support himself and his family. Id., 195–96; see also *Sienkiewicz* v. *Sienkiewicz*, 178 Conn. 675, 679, 425 A.2d 116 (1979) (purpose of limitation on number and amount of wage garnishments "is to permit residual earnings to be paid to the debtor for the support of himself and his family or for any other proper purpose" [internal quotation marks omitted]); *Hartford Postal Employees Credit Union, Inc.* v. *Rosemond,* 33 Conn. App. 395, 399, 635 A.2d 876 (1994) (same). The defendants contend that these cases support the notion that the legislature could not have intended that residual wages would be subject to a property execution or a bank execution because that would lead to the very same problem that § 52-361a was intended to prevent, namely, the impoverishment of judgment debtors.

Although this argument has some superficial appeal, we ultimately are not persuaded. As the Appellate Court recognized in *Hartford Postal Employees Credit Union, Inc.*, "[t]he statutory scheme of postjudgment remedies set forth in chapter 906 of the General Statues balances the equities between judgment creditors and judgment debtors." *Hartford Postal Employees Credit Union, Inc.* v. *Rosemond,* supra, 33 Conn. App. 398. Thus, although the legislature placed limits on the amount of earnings that may be garnished pursuant to § 52-361a in order to ensure that a judgment debtor would have income to support himself and his family, the legislature reasonably could have concluded that other practical realities and equitable considerations make it unnecessary, and even undesirable, to exempt residual wages in the hands of a judgment debtor from further execution.

Among those practical realities is the fact that it would be extremely cumbersome and expensive for a judgment creditor to execute against such wages in a manner that would deprive the judgment debtor of any means to support himself. In a typical case in which the debtor is receiving weekly wages, for example, the judgment creditor would have to lie in wait for the debtor every week to serve a property execution against the debtor's paycheck or cash, or to serve a bank execution against wages deposited in the bank before the debtor has an opportunity to pay bills or to purchase necessities. Moreover, even if the judgment creditor were able to serve executions before the debtor could pay his expenses on a regular basis, the paycheck or cash would be subject to the exemption for "[a]ny interest of the exemptioner in any property not to exceed in value one thousand dollars . . . ." General Statutes § 52-352b (r). In addition, since the 2014 amendment to § 52-367b (c), banks that are served with a bank execution are required to leave $1000 in the judgment debtor's bank account if the funds are readily traceable to an electronic direct deposit of wages. Thus, it is highly unlikely that a judgment creditor would be able to deprive a judgment debtor of all means of support in this manner. Finally, even if it were theoretically possible, it is not in a judgment creditor's interest to force a debtor into insolvency and bankruptcy.[5] On the other hand, if a judgment creditor were permanently barred from executing against the residual wages of a judgment debtor, the judgment debtor could accumulate large amounts of money in cash or in a bank account while his debt to the judgment creditor remained unsatisfied. Cf. *In re Koeneman*, 410 B.R. 820, 827 (Bankr. C.D. Ill. 2009) ("The purpose of garnishment caps is to protect a wage earner living paycheck to paycheck from losing his entire earnings so that he is left destitute with no ability to pay necessary family living expenses. Presumably, by receiving 85 [percent] of his pay, he is at least able to pay the rent and put food on the table. Once he deposits the wages into a bank account, however, the funds become fair game for creditors. An insolvent person may not accumulate and shelter funds in a bank account simply because they derive from wages. It is entirely rational that the [l]egislature would enact wage garnishment caps as a limited, [nonbankruptcy] protection for accrued wages while leaving the wild card exemption as the sole source of protection for paid wages." [Internal quotation marks omitted.]). We conclude, therefore, that it is not inconsistent with public policy to subject residual wages in the hands of a judgment debtor to execution.

Finally, we note that case law from other jurisdictions supports our conclusions that § 52-361a is the only statute that specifically exempts earnings from execution, that § 52-367b (a) does not extend this exemption to wages that have been disbursed to the debtor, that no

other statute specifically exempts wages from execution, and that this interpretation does not undermine public policy. See *Long Island Trust Co.* v. *United States Postal Service*, 647 F.2d 336, 342 (2d Cir. 1981) (provision of Consumer Credit Protection Act of 1970, 15 U.S.C. § 1671 et seq. [1976],[6] placing limits on the amount of earnings that may be subjected to garnishment "has no application to anything other than [the judgment debtor's] earnings before they are paid out by his employer"); *Usery* v. *First National Bank of Arizona*, 586 F.2d 107, 111 (9th Cir. 1978) ("[T]he Consumer Credit Protection Act protects the funds concerned only from garnishment. If Congress had meant to restrict creditors' access to wages even after they left the control of the employer, it seems anomalous that it did not provide for protection from attachment of such monies while in the hands of the employee, as [it] did in the case of [S]ocial [S]ecurity benefits."); *United States* v. *Armstrong*, United States District Court, Docket No. 3:04-CV-1852-H (N.D. Tex. April 21, 2005) ("[f]ederal courts interpreting [the Consumer Credit Protection Act] earnings exemption and state courts interpreting its state law equivalents have consistently held that payments that would otherwise constitute earnings lose their status as earnings once they pass to the hands or bank accounts of the debtor"); *Frazer, Ryan, Goldberg, Keyt & Lawless* v. *Smith*, 184 Ariz. 181, 185, 907 P.2d 1384 (App. 1995) (Arizona statute limiting amount of earnings that are subject to garnishment does not apply to wages deposited in bank account because statute was modeled on Consumer Credit Protection Act and "courts that have considered whether the federal garnishment exemption extends to earnings disbursed to the judgment debtor's bank account have uniformly held that it does not"); *Brown* v. *Kentucky*, 40 S.W.3d 873, 879 (Ky. 1999) (Kentucky's wage garnishment statute does not protect wages deposited in checking account); *Edwards* v. *Henry*, 97 Mich. App. 173, 176–80, 293 N.W.2d 756 (1980) (Consumer Credit Protection Act does not protect wages deposited in bank account); *John O. Melby & Co. Bank* v. *Anderson*, 88 Wis. 2d 252, 252, 276 N.W.2d 274 (1979) ("the federal statutory restrictions on garnishment do not apply to wages after payment to an employee and deposit in a bank account").

We therefore conclude that the postjudgment execution statutes do not provide any specific exemption for residual, postgarnishment wages that have been disbursed to a judgment debtor or placed in the judgment debtor's bank account beyond the general exemption set forth in § 52-352b (r) and the procedure set forth in § 52-367b (c), which does not apply retroactively. Accordingly, we answer the certified question in the negative.

The answer to the certified question is: No.

No costs will be taxed in this court to either the plaintiff or the defendants.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald and Robinson. Although Justice Palmer was not present when the case was argued before the court, he has read the briefs and appendices, and listened to a recording of oral argument before participating in this decision.

** December 23, 2016, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The District Court also concluded that, even if § 52-367b (a) applied to the funds in Marguerite's account, there is no exemption under that statute for wages that have been deposited in a bank account.

[2] In support of their claim that the term "debt," as used in § 52-367b, refers exclusively to debts owed by a bank to depositors, the defendants refer to this court's statement in *Fleet Bank Connecticut, N.A.* v. *Carillo*, 240 Conn. 343, 691 A.2d 1068 (1997), that, "[i]n the typical banking relationship, a depositor is considered the 'creditor,' while a bank is considered the 'debtor.' . . . Thus, the term 'debt,' as it is used in the bank execution statute, refers to the amount [the bank] owed [the depositor] as a result of the joint bank account." (Citations omitted.) Id., 348 n.6. We did not state in *Carillo*, however, that the term "debt," as used in § 52-367b, refers *exclusively* to amounts owed to a depositor. Rather, we were simply explaining the distinction between the banking debt that was at issue in that case and the judgment debt. See id. Similarly, this court's statement in *State* v. *Lavigne*, 307 Conn. 592, 606, 57 A.3d 332 (2012), that § 52-367b "governs executions on bank accounts by judgment creditors" did not purport to limit the scope of the "debts" referred to in that statute in any way.

The defendants also contend that § 52-367b refers repeatedly to the judgment debtor's "account" and that "[n]o . . . procedures pertaining to levy upon or transfer of an employee's paycheck are described in § 52-367b's text." There would be no reason for the legislature to refer to earnings or to include such procedures in § 52-367b, however, because the legislature made it clear in § 52-367b (a) that, to the extent that the bank owes debts to its employees in the form of earnings, those debts may be executed only pursuant to § 52-361a.

[3] Public Act 81-352, § 2, provides in relevant part: "(a) Execution may be granted pursuant to this section against any debts due from any banking institution to a judgment debtor who is a natural person, except to the extent such debts are protected from execution by [section] . . . 52-361 . . . ." General Statutes (Rev. to 1981) § 52-361 was the wage garnishment statute when P.A. 81-352 was enacted.

[4] See, e.g., Office of Legislative Research, Bill Analysis, Senate Bill No. 57, 2014 Sess. ("[t]he [existing] law allows creditors to seek an execution order on a bank to remove funds from a debtor's bank account, although it exempts from the execution the lesser of [1] 75 [percent] of a debtor's disposable weekly earnings or [2] $348 of weekly wages").

[5] See *Brown* v. *Commonwealth*, 40 S.W.3d 873, 879 (Ky. 1999) ("[T]he limited protection afforded by [Kentucky's wage garnishment statute] encourages debtors and creditors alike to consider the long-term ramifications of [an execution against a bank account]. Thus, both the creditor and the debtor must decide whether they would not be better off in the long run if the debtor was not forced into bankruptcy . . . but was instead encouraged to continue working and steadily repaying his debts.").

[6] This state's wage garnishment statute was originally modeled on the federal Consumer Credit Protection Act of 1970. See 13 H.R. Proc., Pt. 8, 1969 Sess., p. 3864, remarks of Representative Edward S. Rimer, Jr. (predecessor to § 52-361a was amended "so as to bring it into conformity with . . . the [f]ederal Consumer Credit Protection Act").